[No. 26678.   Department Two.   September 14, 1937.]

*In the Matter of the Adoption and Change of Name of*
*A* MINOR.[1]

ROBINSON, J.—The child involved in this proceeding was born out of wedlock in the state of California. The mother, a former resident of Washington, took up her residence in California about a year prior to its birth. Its father had then resided in California for about ten years and has lived there ever since. He had been married about five years before the child

[1]Reported in 71 P. (2d) 385.

was born, and was then, and still is, living with his lawful wife.

The father paid the doctor and nursing bills incident to childbirth, provided for the necessities of mother and child in various ways, and gave the child his own name in the official birth certificate. When the child was about fifteen months old, the father, the father's wife, and the child's mother entered into an agreement in writing in which it was recited, over their individual signatures, that, with the view of promoting the child's welfare, the father had acknowledged it as his own, taken it into his home, with the consent of his wife, and treated it as if it were legitimate, and it was agreed that he, with the consent of his wife, would so continue to acknowledge it, provide for its support, and treat it in all respects as if it were a legitimate child.

The final paragraph of this tri-party agreement, omitting the names of the parties thereto, reads as follows:

"It is further agreed and understood that [name of mother] is not relinquishing her rights in said child and that she may visit said child at any and all times and that in the event of the death of [the father], [his wife] will permit the return of said child to [the mother]."

For about a year and a half after the execution of this agreement, the child was in the general custody of its father, although it was sometimes, for a week at a time, in the care of its mother. Without advising the mother of his intention, the father took the child to his former home in an eastern state. After the father and child had been east about three months, the mother followed, her intent being to get possession of the child.

A new agreement was entered into, the father and mother subscribing and swearing to it before a notary.

The substance of this agreement was that the father would return the child to the state of California within two weeks; that the mother would then have it for the next two weeks; and that after that each of them would have it for alternate periods of two weeks, and that neither would remove it from a California county, therein named, without the consent of the other; this arrangement to obtain until the child became of school age, whereupon the father was to have it during school days and the mother on week-ends; during vacations, the father and mother to have it for alternate periods of two weeks. If the child became ill while in the custody of either parent, the other was to have the right of visitation.

Pursuant to this agreement, the child was returned to California; and some months thereafter, the mother, without notifying the father, removed it to this state. The petition for adoption was subsequently filed by relatives of the mother, her written consent being attached thereto. The father appeared personally and resisted the granting of the petition.

In contests involving the custody of a child, the air is ordinarily filled with charges and counter-charges. In this case, the mother testified that both the father and his wife loved the child and treated it with great kindness. No attack was made upon the father in any way, nor did the father in any way attack or disparage the petitioners or the child's mother. All parties concerned in this matter, in everything they have done or tried to do, seem to have had as their first consideration the welfare of the child. It may be added that the father of the child and the relatives of the mother who sought to adopt it are in about equally modest circumstances. If the case turned upon the question as to what disposition of the matter

would best serve the interest of the child, it would be very difficult to make a decision.

Section 230 of the Civil Code of California provides as follows:

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption."

In the article on adoption in Volume 1, California Jurisprudence, the author says, at page 455, under the subheading found on page 451, "Adoption by Legitimation":

"Four things are essential under this section for the adoption of an illegitimate child by its father: (1) He shall be its natural father; (2) he shall have publicly acknowledged himself to be the father; (3) he shall have received the child into his family; (4) he shall have otherwise treated it as his legitimate child."

It is undisputed that the appellant is the child's natural father, and it is clear that he has fully complied with the requirements of § 230 of the Civil Code of California. It is, therefore, urged on his behalf that the child is his "adopted" child.

█ Attorney for the respondents calls attention to the fact that § 224 of the California Code provides, in part, that a legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, and contends that no unqualified consent by the mother is shown as required by that section; to which appellant replies that § 230 expressly provides that the preceding sections of the Code do not apply.

In spite of the classification made by the author of

California Jurisprudence, and in spite of the language used in the case of *In re De Laveaga's Estate*, 142 Cal. 158, 75 Pac. 790, we think that this is a legitimation, rather than an adoption, statute, and agree with the construction put upon it in the California case of *Blythe v. Ayres*, 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40, and the well-reasoned opinion dealing with a similar statute in the case of *Allison v. Bryan*, 26 Okla. 520, 109 Pac. 934, 30 L. R. A. (N. S.) 146. In our opinion, the contention of respondents' attorney that the child is not the adopted child of the appellant is correct. But the fact that the child is not the "adopted" child of the appellant is not determinative. It is, says the statute (§ 230), "for all purposes legitimate from the time of its birth." Under the California statute, it is clear that that status can be created by a child's natural father without its mother's consent.

Respondents point out that, at common law, a mother of an illegitimate child has the right to his custody and control, and that his domicile follows the domicile of his mother. Hence, it is contended that the child, at the time the judgment and order appealed from was entered, was domiciled in Washington, the mother having testified that she returned here with the intention of remaining; and that the court, therefore, had jurisdiction to enter the judgment and order. But if an illegitimate minor child is legitimatized as to the father from the time of its birth, as the child in this case was, such child's domicile becomes that of its father from the time of its birth, and under such legitimation the child's domicile during its minority follows that of the father, under the same circumstances as any other legitimate child. American Law Institute Restatement of the Law, Conflict of Laws, § 34c. Since the father of this child was domiciled in the state of California at the time of its birth and

has remained so domiciled ever since, the child has never been domiciled in the state of Washington.

The right to adopt a child is wholly statutory, and he who claims that an act of adoption has been accomplished must show that every essential requirement has been complied with. *In re Sharon's Estate,* 179 Cal. 447, 177 Pac. 283. This is strongly emphasized in our own case of *In re Nelms,* 153 Wash. 242, 279 Pac. 748, and was previously so held in *In re Renton's Estate,* 10 Wash. 533, 39 Pac. 145, and in *In re Lease,* 99 Wash. 413, 169 Pac. 816.

Our statute covering adoption reads, in part, as follows:

"Any inhabitant of this state, not married, or any husband or wife jointly, may petition the superior court of the county of their residence for leave to adopt, and change the name if desired, of any person, *but a written consent must be given* to such adoption by the person, if of the age of fourteen years, and if under the age of twenty-one years *by each of his or her living parents,* or in case the child be illegitimate, by his or her living mother; . . ." Rem. Rev. Stat., § 1696 [P. C. § 9813]. (Italics ours.)

The child whose adoption was ordered in this case was not an illegitimate child at the time the petition was heard and judgment entered, for the reason that it had previously become, by virtue of the law of its domicile, the legitimate child of the appellant father "for all purposes."

"The status of legitimacy, created by the law of a state having jurisdiction so to do, will be given the same effect in another state as is given by the latter state to the status when created by its own law." American Law Institute Restatement of the Law, Conflict of Laws, § 141.

Accordingly, when the child in this case was brought before the court for adoption, its status was that of a

legitimate child of the appellant for all purposes, and it was legally entitled to be so treated and considered in any action which the court might take; and, since the child was the legitimate child of the appellant for all purposes, the appellant was necessarily the legitimate parent of the child for all purposes, and he was also legally entitled to be so treated and considered in any action which the court might take. They were not so treated and considered. The judgment and order appealed from is based wholly upon the theory that the child before the court was a bastard, and the father was held to have no rights with respect to it whatsoever.

That our courts have no jurisdiction to enter a decree authorizing the adoption of a minor child without the written consent of "each of his or her living parents" is clear from the words of the statute, which says that such consent "must be given." When the appellant father appeared and actually resisted the granting of the petition, it became manifest that the trial court had no jurisdiction to proceed further in the matter other than to enter an order of dismissal.

The judgment and decree appealed from is reversed, and the trial court is directed to dismiss the petition.

In reporting this case, the reporter is directed to use the heading found at the beginning of this opinion without any addition thereto other than the usual syllabus.

STEINERT, C. J., MILLARD, and BEALS, JJ., concur.

HOLCOMB, J., concurs in the result.