[No. 29314.    *En Banc.*    September 23, 1944.]

*In the Matter of the Adoption of* LINDA LEE BLAKE, *a Minor.*[1]

'Reported in 151 P. (2d) 825.

*Tworoger, Horr & Franco,* for appellant.

*Max Church,* for respondent.

BLAKE, J.—Linda Lee Blake was born out of wedlock—the child of Beverly W. Blake and Hazel Huss. May 23, 1942, upon petition of the former, she was adjudged to be a dependent child by the juvenile court of Clallam county and placed in the custody of her father. The matter of her custody came up again on July 27, 1942, and the court placed the child in the custody of Beverly Blake and Ethel Blake "for six months from this date." (Ethel Blake is the wife of Beverly W. Blake.) Again, on April 2, 1943, the court entered an order "that the said child be a ward of [this] court; and that the child be placed in the temporary custody of Beverly and Ethel Blake for a period of six months from the date of this hearing." The next day, however, the court made an oral ruling, which, among other things, provided as follows:

"The court denies the petition of Beverly Blake that the child be placed with his Mother. . . . It is found by the Court that there is no suitable fixed home for the minor and she will be placed permanently by this court.

"Mr. Blake is ordered to have Linda Lee in Port Angeles before this Court on Wednesday, April 7, 1943. . . .

"As requested by Mr. Blake, the home of Zella Streeter, Aunt of Mr. Blake, will be considered by the Court when permanent placement of the child is made."

On April 7th, it was by the court

"Ordered and Adjudged, that the said Linda Lee Blake be and she is hereby declared a ward of this Court and will be placed permanently by the Court in a foster home."

Shortly thereafter, she was placed in the custody of Mr. and Mrs. George W. Eccleston, of Port Angeles.

In May, 1943, Effie McPherson (mother of Beverly W. Blake) and her husband, William G. McPherson, residents of Yakima county, filed in the superior court of that county a petition for the adoption of the child. Accompanying the petition was the written consent of her parents, Blake and Hazel Huss. Upon this petition, a decree of adoption was entered June 8, 1943.

On June 17, 1943, the Ecclestons filed a petition for adoption of the child in the superior court of Clallam county. Without notice to either Blake or Hazel Huss, that court, on June 21, 1943, entered an order of adoption upon the petition of the Ecclestons. Blake subsequently filed a petition to vacate the order. From judgment dismissing his petition, Blake appeals.

Appellant contends: (1) That the decree of adoption entered by the superior court of Yakima county is a conclusive adjudication with respect to the status of the child; (2) that the order of adoption entered by the superior court of Clallam county is void.

■ Appellant's first contention is manifestly untenable. To sustain it would seriously impair the power of juvenile courts under the Laws of 1913, chapter 160, p. 520, as amended by the Laws of 1937, chapter 65, § 1, p. 211 (Rem. Rev. Stat., §§ 1987-1, 1987-3 to 1987-18 [P. C. §§ 593, 595 to 610], and Rem. Rev. Stat. (Sup.), § 1987-2 [P. C. § 594]). Where the juvenile court of a county acquires jurisdiction of a dependent child and declares it to be a ward of the court, the jurisdiction of the superior court of another county cannot be invoked to pass upon or determine the legal status of the child. (Whether the superior court of another county would have jurisdiction to entertain *habeas corpus* proceedings with respect to such a child, is, of course, a different question.) We feel certain that the superior court of Yakima county would not have undertaken to do so in this instance had it been informed that the child was a ward of the juvenile court of Clallam county.

Appellant's second contention is based upon failure of the court to comply with §§ 5 and 8, Laws of 1943, chapter 268, pp. 829, 830 (Rem. Supp. 1943, §§ 1699-6, 1699-9). That is an act relating to adoption, and repealing prior laws dealing with the subject. Section 3, p. 828 (Rem. Supp. 1943, § 1699-4), of the act provides that "Written consent to . . . adoption must be filed prior to a hearing upon [the] petition, as follows:

"(b) If the person to be adopted be of legitimate birth or

*legitimized thereafter,* and a minor, then by each of his living parents, *except as hereinafter provided;*

" (c) If the person to be adopted be illegitimate and a minor, then by his mother, if living, *except as hereinafter provided;* . . . " (Italics ours.)

Section 4, p. 829, provides:

"No consent for the adoption of a minor shall be required as follows:

" (a) From a parent deprived of civil rights;

" (b) From a parent who has been deprived of the custody of such child by a court of competent jurisdiction, after notice: *Provided, however,* That a decree in an action for divorce, separate maintenance or annulment, which grants to a parent any right of custody, control, or visitation of a minor child shall not constitute such deprivation of custody;

" (c) From a parent adjudged and decreed to be incompetent;

" (d) From a parent who, more than one (1) year prior to the filing of a petition hereunder, has been adjudged to be insane and who has not thereafter been found sane by competent authority authorized by law so to do;

" (e) From a parent who has been found by a Court of competent jurisdiction, upon notice as herein provided to such parent, to have deserted or abandoned such child."

Section 5, p. 829, provides:

"If the Court, in an adoption proceeding, after a hearing for that purpose upon notice thereof as hereinafter provided having been given to a parent, shall find any of the conditions set forth in the preceding section hereof to be a fact as to such parent, then the Court may decree that consent of such parent shall not be required prior to adoption."

Section 8, p. 830, reads as follows:

"The Court shall direct notice of any hearing hereunder to be given to any non-consenting parent or guardian, if any, or any person or association having the care, custody or control of said child. Such notice shall be given in the following manner: The Court shall direct the clerk to issue a notice directed to the parent or such person or association as may have the actual care, custody, or control of such child, returnable in not less than ten (10) days from the date of its issuance, which notice shall be served in the following manner: By personal service as provided for the service of summons: *Provided, however,* That if it appears

from the affidavit of the petitioner that personal service may not be had, then by publication in the manner provided by law for publication of summons, for a period of two (2) weeks, said notice by publication to be returnable fifteen days after the first publication thereof: *And provided further*, That if the Court is satisfied of the illegitimacy of the child to be adopted, and so finds, then no notice to the father of such child shall be required. Proof of service of notice shall be filed in said cause as required by law for making proof of the service of summons."

We think these sections of the act and their objects are too plain to admit of construction. The consent of both parents of a legitimate or *legitimized* child must be filed prior to hearing on a petition for adoption unless either one of the conditions set out in § 4 is found to exist. If such a condition be found to exist after a hearing as provided for in § 5, then the court may entertain the petition and enter a decree of adoption without consent of the parent or parents. Nevertheless under § 8, the nonconsenting parent or parents of a legitimate or legitimized child must be given notice of hearing on the petition either personally or by publication.

Rights of adoption are created by statute, and, in order to effect the adoption of a child, the procedure set up by the statute must be strictly followed. *In re Renton's Estate,* 10 Wash. 533, 39 Pac. 145; *In re Nelms,* 153 Wash. 242, 279 Pac. 748; *In re a Minor,* 191 Wash. 452, 71 P. (2d) 385.

No hearing was had in the adoption proceeding as required by § 5, for the purpose of finding the existence of any of the conditions set out in § 4, upon which the adoption may proceed without the consent of the parents of a legitimate or a *legitimized* child. Neither was any notice of hearing upon the petition for adoption given as required by § 8 of the act. The failure to give notice as required by that section renders the order of adoption void. *In re a Minor, supra.*

Blake, however, is in no position to challenge the validity of the order unless some *right* of his is adversely affected by it. And unless the child was legitimized in con-

templation of § 3 of the act, no right of his was affected by the court's failure to proceed with the adoption without compliance with the provisions of §§ 5 and 8, for, by the express terms of § 3, his consent is not a prerequisite to the adoption unless the child was legitimized. Nor, in the absence of legitimation, would he be entitled under § 8 to notice of hearing on the petition for adoption.

If, however, the child had been *legitimized* in contemplation of § 3(b) of the adoption statute, appellant would be entitled to notice of hearing upon the petition for adoption; and his rights would be adversely affected by the order of adoption.

Remington's Revised Statutes, § 1345 [P. C. § 9850], is the only statute of this state under which it could possibly be claimed that appellant's written acknowledgment of paternity constituted a legitimation of the child. That statute, in substance, provides that, by such an acknowledgment made in the presence of a competent witness, an illegitimate child "shall inherit his [father's] estate . . . in the same manner as if he had been born in lawful wedlock." Then follows a provision to the effect that such child shall not inherit from the father or mother's lineal or collateral kin "unless . . . his parents shall have intermarried, and his father, after such marriage, shall have acknowledged him as aforesaid." Concerning the effect of this section as a statute of legitimation, this court, in *Hurst v. Wagner,* 181 Wash. 498, 43 P. (2d) 964, said, p. 501:

"It will thus be seen, from a reading of the section as a whole, that the acknowledgment in writing of an illegitimate child by the father confers upon the child a restricted right to inherit from the father, but does not of itself legitimatize the child. Legitimacy only follows where the parents have intermarried and the father, after marriage, shall have acknowledged the child in the manner provided."

. It follows that Linda Lee Blake was not legitimized in contemplation of § 3 of the adoption statutes; consequently, no right of appellant's was adversely affected by the order of adoption, and he is in no position to challenge its validity. It follows, too, that the judgment dismissing appellant's

petition to vacate the order of adoption must be affirmed, subject, of course, to the inherent power of the superior court to purge its records of void judgments, and with reservation of the right of the mother to challenge the validity of the order of adoption.

ALL CONCUR.