[No. 30176. Department Two. July 24, 1947.]

*In the Matter of the Adoption of* JUDITH ANN GUSTAFSON, *a Minor.*

ARTHUR GUSTAFSON *et al., Appellants,* v. BETTY GUSTAFSON, *Respondent.*[1]

[1]Reported in 183 P. (2d) 787.

*Lawrence H. Brown,* for appellants.

JEFFERS, J.—This matter comes before us on the appeal of Arthur Gustafson and wife from an order entered by the superior court for Spokane county, in consolidated actions involving an adoption proceeding instituted by Arthur Gustafson and his present wife, Marjorie Gustafson (cause No. 42903), and a proceeding to modify a decree of divorce entered by the superior court for Spokane county, in an action wherein Arthur Gustafson was plaintiff and his then wife, Betty Gustafson, was defendant (cause No. 114491).

Arthur Gustafson and Betty Gustafson were married in 1939. One child, Judith Ann Gustafson, was born as a result of this marriage. On or about May 22, 1945, Arthur Gustafson began an action for divorce against his then wife, Betty, which resulted in an interlocutory decree on June 12, 1945, granting to plaintiff a divorce and the custody of Judith Ann Gustafson, subject to the further order of the court. In its findings in the divorce action, the court found that Betty Gustafson was not a fit and proper person to have the care and custody of the child. No right of visitation was granted to Betty Gustafson by the decree. A final decree of divorce was entered on December 20, 1945.

On September 3, 1946, Betty Hart, formerly Betty Gustafson, filed in the court last above mentioned a motion to modify the decree of divorce hereinbefore referred to, to the extent of awarding to her the custody of the minor, subject to the right of visitation by the father, Arthur Gustafson. On the same day the above motion was filed, a show cause order was issued, directing Arthur Gustafson to appear on September 25, 1946, and show cause, if any he had, why the motion should not be granted.

On October 15, 1946, Arthur Gustafson and his present wife, Marjorie, commenced an action to adopt Judith Ann Gustafson, who was then five years of age. It was alleged in the petition for adoption that petitioner Arthur Gustafson was the father of the minor, and that she had been living with petitioners; that the mother of the minor had been deprived of the custody of the child by the divorce decree hereinbefore referred to.

On the same day the petition was filed, to wit, October 15, 1946, the court entered an order that a hearing on the petition be had on October 28, 1946, and that the mother, Betty Hart, be given notice of such hearing.

On October 17, 1946, the court entered an order referring the matter of the adoption to Lillie B. Breese, a suitable person, as next friend of Judith Ann Gustafson, requiring such next friend to make a full and complete investigation and report relative to the proposed adoption, which report, recommending that the adoption be allowed, was filed on October 19, 1946.

The petition for adoption did not come on for hearing on October 28, 1946; neither did the motion to modify the decree of divorce come on for hearing on September 25, 1946.

On November 18, 1946, Betty Hart filed, in the adoption proceeding, her objections to such adoption, stating therein, among other things, that the petition for adoption was not filed in good faith, but solely for the purpose of depriving her of having the custody of the minor, or even the right of visitation; that, at the time the petition for adoption was

filed, there was pending in the divorce proceeding a motion to modify the decree, which motion had not been heard.

We have set out the state of the record at the time the two proceedings came before the court to be heard on November 18, 1946.

Counsel for petitioners in the adoption proceeding contended that the adoption matter should be heard first, while counsel for Betty Hart contended that the two proceedings should be heard together. The trial judge decided that he would hear the two proceedings together, keeping the evidence which applied to each matter separate in his mind, and that was the method adopted and under which the two proceedings were heard.

At the conclusion of the hearing, and on December 18, 1946, the court entered findings and an order. The court found that Arthur and Marjorie Gustafson were fit and proper persons to adopt the minor, Judith Ann Gustafson, aged five years; that Betty Hart had been deprived of the custody of the minor child by the interlocutory decree entered June 12, 1945; that, save for the fact that, at the time of the filing of the petition to adopt the minor, there was pending the motion of Betty Hart to modify the divorce decree in cause No. 114491, and that the court had found that it was proper that the divorce decree be modified to the extent that Betty Hart should be given the right of visitation of the minor at reasonable times and places, in Spokane, the court would grant the adoption petition of Arthur Gustafson and Marjorie Gustafson in cause No. 42903.

As to the petition in cause No. 114491 to modify the decree of divorce as to the custody of the minor, the court found that it was proper that Betty Hart be given the right of visitation of the minor at reasonable times and places in Spokane, but that it was not to the best interest and welfare of the minor that her custody be awarded to Betty Hart, and therefore the petition was in all other respects denied. The order concludes:

"It Is Ordered:

"(1) That said decree of June 12th, 1945 in said cause No. 114491 be modified in the following particular only:

That said Betty Hart be permitted visitation of said minor at reasonable times and places in Spokane, Washington.

"(2) That in all other respects said petition to modify said decree of June 12th, 1945 in cause No. 114491 be and the same is hereby denied.

"(3) That the petition of Arthur Gustafson and Marjorie Gustafson in cause No. 42903 to adopt said minor, be and the same is hereby denied.

"Each and all of the parties hereto except to the above findings and order, and their respective exceptions are allowed."

Arthur Gustafson and wife have appealed from the order entered, and have assigned as error: (1) the refusal of the court to proceed with the adoption on the coming in of the report of investigation; (2) the refusal to hear the adoption as a separate case; (3) the refusal to withhold hearing of the modification proceeding until the adoption was disposed of; (4) the denial of the petition to adopt; and (5) the modification of the divorce decree to permit visitation by the mother, Betty Hart.

We shall discuss appellants' first three assignments together, as they all relate to the contention that the adoption proceeding should have been heard first and disposed of.

Appellants cite Rem. Supp. 1943, § 1699-5 [P.P.C. § 354f-9], which provides:

"No consent for the adoption of a minor shall be required as follows: . . .

"(b) From a parent who has been deprived of the custody of such child by a court of competent jurisdiction, after notice: *Provided, however,* That a decree in an action for divorce, separate maintenance or annulment, which grants to a parent any right of custody, control, or visitation of a minor child shall not constitute such deprivation of custody."

They also cited the following portion of Rem. Supp. 1943, § 1699-12 [P.P.C. § 354f-23]:

"Upon the conclusion of such hearing, if had, or upon filing the report of investigation, if any, or as soon as the procedure hereunder may permit, the Court shall enter its decree either granting or denying the petition for adoption

and change of name, if any, all as in its discretion it shall deem proper."

As we understand appellants' contentions, they are that, Betty Hart having been deprived by the divorce decree of the custody of the minor prior to the filing of the petition for adoption, her consent to the adoption was not necessary; that, upon the filing of a favorable report on the adoption by the next friend of the minor, the court should have proceeded to hear and dispose of the adoption proceeding, regardless of the pendency of the motion to vacate the divorce decree; and that appellants were entitled to have their petition for adoption passed upon according to the record in the divorce action as it existed at the time their petition was filed, and not as of a time when that record might be modified.

It may be admitted that, where the entire and absolute custody and control of a minor child is awarded to one of the parents by a divorce decree, in a subsequent adoption proceeding it is only necessary to obtain the consent to such adoption of the parent to whom such custody was awarded. In other words, the court, under the circumstances last mentioned, would be expressly authorized by the statute to proceed to hear the petition for adoption. *In re Lease*, 99 Wash. 413, 169 Pac. 816; *In re Force*, 113 Wash. 151, 193 Pac. 698.

However, we have been cited to no authority which holds that the court may not permit the parent who was denied custody of the minor to appear in the adoption proceeding and file his or her objections thereto, and be heard relative to such objections.

There are good and sufficient reasons which suggest themselves to us for permitting such a parent as the one last mentioned to appear in an adoption proceeding, and for the court's considering such objections. We mention only one, namely, that a divorce decree, in so far as the custody of children is concerned, is subject to modification and change, under certain conditions. From the record in this case, it is apparent to us that the trial court realized that, if the adoption were granted, the mother would be forever deprived of

any right to the custody of the child, or even the right of visitation, and further realized that, if it appeared from the evidence that the best interest of the minor would be served by a modification of the divorce decree, then the petition for adoption could not be granted, regardless of the fitness of the petitioners in the adoption proceeding.

In the instant case, one of the parties seeking to adopt the child is her father, who is already obligated to care for and support the minor, and it does not appear that there is any situation presented which would seem to necessitate an immediate change, in so far as the home life of the child is concerned.

As hereinbefore stated, the petition for adoption was not filed until after the motion to modify the decree had been filed. Both the petition to adopt and the motion to modify were pending in the superior court for Spokane county. We are clearly of the opinion that, under the situation presented, the trial court could have heard the motion to modify the decree before it heard the petition to adopt, had it so desired. In other words, the trial court surely has some discretion in a situation such as here presented. However, the trial court decided to hear both matters at the same time, considering the evidence applicable to each proceeding. We are of the opinion the court did not err in so proceeding. We are further of the opinion that the provisions of the adoption statute are not so mandatory that the trial court violated any provision thereof by proceeding as it did.

Appellants cite the case of *State ex rel. Towne v. Superior Court*, 24 Wn. (2d) 441, 165 P. (2d) 862, and argue that "from that decision it would appear that the situation at the time of the application and when the application is heard, is determinative." We do not think the cited case is controlling here. As appears from the opinion, on November 10, 1944, Irene Vinsant gave her written consent to Mack S. Kaliszewski and wife for the adoption of her illegitimate daughter. On January 26, 1945, while the adoption proceeding was pending, she revoked her consent given November 10, 1944. The opinion states:

"That she had the legal right and power to revoke the consent she had given, is not questioned."

On March 1, 1945, Irene Vinsant executed her consent to the adoption of the child by the maternal grandmother and the latter's husband, Salem R. Towne. The Townes shortly thereafter filed a petition for adoption, which invoked the jurisdiction of the superior court for Kitsap county.

Subsequent to the institution of adoption proceedings by the Townes, Mrs. Kaliszewski filed a petition in the juvenile court, which instigated the inquiry and invoked the order under review in the cited case. The question raised was whether the juvenile court should not have held in abeyance proceedings on Mrs. Kaliszewski's petition of dependency until the adoption proceedings instituted by the Townes in the superior court had been disposed of finally. The opinion states:

"The question, we think, must be resolved in favor of the petitioners [Townes] upon the principle that, *when the jurisdiction of two courts is invoked* concerning the same subject of controversy, the court first obtaining jurisdiction is vested with power to determine the controversy to the exclusion of the court the jurisdiction of which is last invoked." (Italics ours.)

In accordance with the rule last above announced, the order under review was reversed, with direction to the juvenile court to hold all proceedings on the petition of dependency in abeyance until the adoption proceedings in the superior court had been finally adjudicated. It is apparent, we think, that the situation here presented is entirely different from that presented in the cited case.

■ Did the trial court err in modifying the divorce decree to the extent of granting to the mother, Mrs. Hart, the right of visitation, which right was limited to Spokane?

It may be admitted that, at the time the divorce action was heard and the decree entered, the court was justified in finding and concluding that the mother, then Betty Gustafson, was not a fit and proper person to have the custody and control of the minor, and was even justified in depriving the mother of the right of visitation, unusual as

the latter provision may be. It may also be admitted that the act of Mrs. Hart which formed the basis of the complaint in the divorce action, involved her association with her present husband, while he was in the army and stationed in or near Spokane.

It may also be admitted that, on May 25, 1945, Betty Hart signed a paper (exhibit No. 5), wherein she authorized Mr. Towles, an attorney residing in Spokane, to appear for her in the divorce action, and wherein she consented to certain amendments to the original complaint, requiring her counsel to put in a general denial to the amended complaint, approving a property settlement, and granting custody of the minor to her husband, Arthur Gustafson. However, it appears from the evidence that certain things transpired at the time the above paper was signed, which we think may have had some influence on the trial court in the present proceeding to give some weight to the contention of Mrs. Hart that, at the time she signed the paper, she was not fully advised by counsel as to her rights. It may be stated that Mr. Towles, who appeared for Mrs. Hart in the divorce action, did not remember that the decree deprived her of even the right of visitation. Mr. Towles further admitted that he was called to the office of counsel for Mr. Gustafson in the divorce action, at which time both Mr. Gustafson and Mrs. Hart were there, and that all the conversation he had with the latter was there in the presence of all the parties mentioned.

But, be that as it may, shortly after the divorce decree was entered, Mrs. Hart left Spokane and went to Chicago, where she met Mr. Hart, and they then went on to Battle Creek, Michigan, where Mr. Hart was in a convalescent hospital at Fort Curtis. Mrs. Hart stayed in Battle Creek for about a month, until Mr. Hart was discharged from the army. During her stay in Battle Creek, she lived at a Red Cross home and Mr. Hart lived at the camp. There was no showing of any immoral conduct on the part of Mrs. Hart during her stay in Battle Creek, although she stated she saw Mr. Hart almost every evening. After Mr. Hart's discharge from the army, he and Mrs. Hart went to the home

of his parents, in Springfield, Illinois, where Mrs. Hart continued to live as a member of the family, occupying a separate room, until her marriage to Mr. Hart on December 23, 1945. It appears from Mrs. Hart's testimony, and from the deposition of her father-in-law, that while living at the Hart home she worked and paid for her board and room.

There is nothing in the record to indicate that, since her marriage to Mr. Hart, respondent has been other than a good wife or has conducted herself in any way but a proper manner. Her conduct since going to Springfield is shown by the deposition of her father-in-law and neighbors.

It appears from the deposition of Mr. Hart and his employer that Mr. Hart has a good job which he is filling satisfactorily. He has purchased a home, where he and Mrs. Hart now live.

Under the circumstances above described, we are unable to say that the trial court was not justified in concluding that the situation relative to Mrs. Hart had so changed since the entry of the divorce decree that she was entitled to have the divorce decree modified to the extent hereinbefore mentioned.

We are of the opinion that there was ample evidence in this case to justify the trial court in concluding that, regardless of Mrs. Hart's acts and conduct prior to the divorce action, she is now, and has been at least since her marriage to Mr. Hart, living a moral life.

May we say here that, in our opinion, the record shows that Arthur Gustafson and his present wife are estimable people, and no doubt would give to the minor every care and attention possible, and while we appreciate that men and courts might differ as to the possible good to be derived by granting to a mother living in Springfield, Illinois, the right of visitation of a child living in Spokane, yet the trial court saw the principal characters in these proceedings and undoubtedly considered the best interests of the minor as the controlling objective.

Having concluded that Mrs. Hart was entitled to have the decree modified, there was of course no other action the court could take but to deny the petition to adopt, which,

if granted, would have deprived Mrs. Hart from ever obtaining any modification of the divorce decree relative to the child.

For the reasons herein assigned, the order of the trial court is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.