[No. 30384. Department Two. March 18, 1948.]

*In the Matter of the Adoption of* LOIS ANN HOPE
*et al., Minors.*

VERA STONE HOPE, *Appellant,* v. HAZEL FENNESSEY,
*Respondent.*[1]

*Olive Scott Johnson,* for appellant.

*Edgar M. Swan,* for respondent.

STEINERT, J.—This is an appeal from a final decree of adoption, wherein the superior court made absolute its prior interlocutory decree covering the same subject matter and simultaneously denied the motion of the contestant therein to set aside that interlocutory decree.

The contestant appellant, Vera Stone Hope, is the mother

[1]Reported in 191 P. (2d) 289.

of the minor children here involved, and is the daughter of Hazel Fennessey, the respondent in this proceeding.

Sometime in 1943, appellant, then about twenty years of age, and J. Raymond Hope in good faith took each other in matrimony. Appellant had been married before to one Ralph W. Stone, by whom she had one child. At the time of her marriage to Hope, appellant believed that Ralph W. Stone was dead.

Two children, Lois Ann and Darinda, were born to appellant and J. Raymond Hope as issue of their marriage. Sometime thereafter, appellant learned that Stone was alive. She thereupon instituted an action in Thurston county, where she was then living, to have her marriage with Hope annulled.

During the course of that proceeding, the parties thereto entered into a written agreement stipulating that appellant herein should be awarded the care and custody of the two children "so long as she shall provide a suitable home for them"; that the defendant in that action, J. Raymond Hope, should pay to appellant the sum of thirty dollars a month toward the children's support; that he should have the right to visit the children at all reasonable times; and that the provisions of the written agreement should be carried into, and made a part of, any decree entered in the annulment proceeding and should be mandatory upon both parties.

That cause came on for hearing on November 27, 1945, at which time the two children, Lois Ann and Darinda, were, respectively, twenty-two months and seven months old. The court made findings of fact, incorporating therein the written agreement and specifically declaring that, at the time of the marriage between appellant and J. Raymond Hope, appellant believed that Ralph W. Stone was dead. Pursuant to the findings of fact and the conclusions of law based thereon, the court entered its decree annulling the marriage between appellant and J. Raymond Hope, awarding the care and custody of the two children to appellant, with the right given to the father, J. Raymond Hope, to visit them at all reasonable times, directing him to pay

appellant the support money as agreed, together with the costs and expenses of the action and a fee for appellant's attorney, and making the written agreement mandatory upon both of the parties.

After the annulment of that marriage, appellant moved to Vancouver, Washington, where she had formerly lived and where her mother, Mrs. Fennessey, the respondent, was living. Mrs. Fennessey was then about forty-six years of age and lived in a rented house. She earned her livelihood by working in a hospital.

It appears from the evidence that for a considerable part of the lifetime of Lois Ann and Darinda, Mrs. Fennessey had been in charge of them and had taken care of them in her home in Vancouver; she also seems to have had charge and taken care of the Stone child for the greater part of his lifetime.

After appellant moved to Vancouver, she and the respondent and the three children lived together for about a year. During that time, J. Raymond Hope contributed to the support of his two children as he had agreed and been directed to do.

In October, 1946, appellant went to a neighboring town to secure employment, leaving the children with the respondent. According to appellant's testimony, respondent asked her at that time to sign papers giving respondent the custody of the two Hope children, so that "in case the father came back that he couldn't take them." At any rate, on October 16th, appellant went to the office of respondent's attorney, who prepared a written consent for her to sign and which she did sign before a notary public. The consent bore the title and number of the adoption cause and read as follows:

"Comes now Vera Stone, the mother of said Lois Ann Hope and Darinda Hope and hereby consents to the adoption of said two children by Hazel Fennessey who is the mother of said Vera Stone and said Vera Stone represents to the Court that said children were born out of lawful wedlock."

On that same day, respondent, Hazel Fennessey, signed a petition, prepared by the same attorney, for the adoption of the two minor children. The petition and appellant's consent were filed October 26, 1946. The court on the same day entered an order appointing a physician to investigate and make report concerning the proposed adoption.

The petition for adoption came on for hearing on November 14, 1946, at which time the court, having considered the report on the investigation made by the physician, entered a decree granting respondent's petition for adoption. The decree contained a recitation of findings to the effect that the children were born "out of lawful wedlock"; that appellant, the mother of the children, had given her written consent to their adoption by the respondent; that respondent is a fit and suitable person to adopt the children; and that it would be for the best interests of the children to permit respondent to adopt them. The decree then adjudged that the petition for adoption by respondent be granted, that the names of the children be changed from Hope to Fennessey, and that the adoption remain interlocutory for a period of six months after entry of the decree, and then become absolute.

At this point we make note of the fact that no written consent by J. Raymond Hope, the father of the children, was ever filed in the adoption proceeding, nor was any such consent ever obtained. As will hereinafter appear, one of appellant's principal contentions is that, without such consent, the court did not have jurisdiction to proceed with the adoption matter.

In the early part of 1947, appellant returned to Vancouver and then, as she claims, learned for the first time of the adoption proceedings. She at once employed an attorney and took steps to have the interlocutory decree of adoption vacated. On April 17, 1947, this attorney filed appellant's "motion to set aside interlocutory order of adoption," and on June 4th filed an amended motion to the same effect. In the motion as amended, appellant alleged, *inter alia,* that J. Raymond Hope, the father of the children, had not consented to their adoption by respondent; that no service of notice of hearing of the petition for adoption was ever made

upon him, although such service could easily have been made; that respondent's action in petitioning for adoption was a fraud upon the court; that appellant's signature to the written consent had been obtained through fraudulent misrepresentations by the respondent and without an understanding of its legal effect by appellant; and that respondent was not a "right and proper" person, financially, mentally, physically, or morally, to rear the children. In her original motion she withdrew her consent to the adoption and later, at the hearing, filed a formal revocation of her consent.

The matter came on for hearing on June 5th on the issues presented by appellant's motion as amended, and evidence was taken. Shortly after the conclusion of the hearing, the trial court entered its final decree denying appellant's motion to set aside the interlocutory decree previously entered, and adjudging that all of the provisions of that decree be made final and absolute.

In her assignments of error, appellant asserts that the trial court erred (1) in entering the interlocutory decree of adoption, unsupported by the necessary jurisdictional requirements; (2) in finding that appellant's consent to the adoption was sufficient and that such consent had not been timely withdrawn; (3) in finding that appellant could not object to the jurisdiction of the court, because she had represented in her consent that the children were "born out of lawful wedlock"; (4) in failing to find that the consent of the appellant was obtained by fraud; and (5) in failing to find that respondent was not a "right and proper" person to adopt the children.

Since our decision upon the first of these assignments of error effectually disposes of the case, the other assignments will not be discussed.

■ Rights of adoption are purely statutory, and in order to effect the adoption of a child, the procedure set up by the statute must be strictly followed. *In re Blake,* 21 Wn. (2d) 547, 151 P. (2d) 825, and cases therein cited.

The right to adopt a child being wholly statutory, one who claims that an act of adoption has been accomplished

must show compliance with every essential requirement. *In re a Minor,* 191 Wash. 452, 71 P. (2d) 385.

With these rules in mind, we shall examine the applicable legislative act relating to adoption of children, chapter 268, Laws of 1943, p. 828 (Rem. Supp. 1943, §§ 1699-1 to 1699-17 [P.P.C. §§ 354f-1 to 354f-17], inclusive), as amended by chapter 191, Laws of 1945, p. 550 (Rem. Supp. 1945, § 1699-12). Parenthetically, we may note that the act was amended in 1947, chapter 251, Laws of 1947, p. 1038. The act as amended is known as the Washington state adoption act and repeals prior laws dealing with the subject of the adoption of children.

Section 3 of the act (Rem. Supp. 1943, § 1699-4) provides:

"Written consent to such adoption must be filed *prior to a hearing* on such petition, as follows: . . .

"(b) If the person to be adopted be of legitimate birth or legitimized thereafter, and a minor, then by each of his living parents, *except as hereinafter provided*;

"(c) If the person to be adopted be illegitimate and a minor, then by his mother, if living, *except as hereinafter provided*; . . ." (Italics ours.)

Section 4 of the act (Rem. Supp. 1943, § 1699-5) provides:

"No consent for the adoption of a minor shall be required as follows: . . .

"(b) From a parent who has been deprived of the custody of such child by a court of competent jurisdiction, after notice: *Provided, however,* That a decree in an action for divorce, separate maintenance or *annulment,* which grants to *a parent* any right of custody, control, or *visitation* of a minor child shall not constitute such deprivation of custody; . . ." (Italics ours.)

Section 5 of the act (Rem. Supp. 1943, § 1699-6) reads:

"If the Court, in an adoption proceeding, after a hearing for that purpose upon notice thereof as hereinafter provided having been given to a parent, shall find any of the conditions set forth in the preceding section hereof to be a fact as to such parent, then the Court may decree that consent of such parent shall not be required prior to adoption."

Subsequent sections of the act prescribe the method for instituting an adoption proceeding, the required contents of the petition, the necessity for accompaniment of the

written consent with the petition, the kind of notice to be given of the hearing in cases of nonconsent, and the conditions under which no notice need be given.

Although some of the foregoing sections of the act relate to the notice to be given of a hearing, we are not now predicating our decision upon the matter of notice, but rather upon the matter of "consent," and, in our reference to consent, we mean in this instance the consent of J. Raymond Hope, the father of the children, not that of appellant, the mother.

It will be observed that § 3(c) of the act (Rem. Supp. 1943, § 4(c)) requires that if the person to be adopted be illegitimate, then written consent must be filed by the mother, if living, "except as hereinafter provided"; and, further, that § 4(b) of the act (Rem. Supp. 1943, § 5(b)) provides that no consent shall be required from a parent who has been deprived of the custody of a child by a court of competent jurisdiction, but at the same time specifically provides that a decree in an action for divorce, separate maintenance, or *annulment,* which grants to *a parent* any right of custody, control, or *visitation* of a minor child, shall not constitute such deprivation of custody.

For the purpose of the argument, we will assume, as respondent contends and appellant denies, that, within the intent and meaning of the adoption statute, the term "born out of lawful wedlock" is the equivalent of the term "illegitimate" as used in the statute.

Section 3(c), quoted above, must be read in connection with § 4, not only because the two sections are *in pari materia* with respect to consent, but also because of the phrase "except as hereinafter provided," appearing in the former.

When the two sections are so read, it is our opinion that they are to be construed as meaning that in a case involving the adoption of an illegitimate child, where the parents of the child in good faith entered into a marriage relationship with each other, but, after the birth of the child, the marriage is annulled by a decree of court because the parties could not have lawfully married each other, and

where, in the decree of annulment, either parent is granted some right of custody, control, or visitation of the child, such parent is not to be regarded as one who has been deprived of the custody of the child, and hence is not to be included in the category of persons whose consent to the adoption of the child is not required. In such a set of circumstances, we believe that the statute intended that written consent, not only of the mother, but also of the father is necessary.

There is good and, we think, sufficient reason for such holding. J. Raymond Hope is the natural father of these two minor children. They were born in what at the time was thought to be lawful wedlock. He has the same love and concern for them as though they had been born as the result of a legal marriage; their plight is such that his love and concern for them may be even greater. In the annulment proceeding, the court gave him certain rights with respect to the children and at the same time imposed certain obligations upon him for their support. He has an interest in their welfare and has the right upon visitation to observe whether they are being cared for in the proper manner. He does not come within any of the deprivation provisions of § 4 of the act (Rem. Supp. 1943, § 1699-5).

If the decree of adoption procured by the respondent in this case were permitted to stand, it would be a final adjudication of the status of the minors as to their future parentage and would terminate any parental rights heretofore granted to or enjoyed by the father. Such conclusive and far-reaching result should not be permitted without his consent or some other act on his part amounting to a forfeiture of his rights. This court has on at least two occasions given expression to this thought in analogous situations. *In re Lease,* 99 Wash. 413, 169 Pac. 816; *In re Gustafson,* 28 Wn. (2d) 526, 183 P. (2d) 787.

In the *Lease* case, *supra,* the parties had been divorced, and custody of their minor child had been awarded to the mother, with the right of visitation reserved in the father. Proceedings for the adoption of the child were later brought by a third party upon the written consent of the mother.

A decree of adoption was entered, and shortly thereafter the father of the child filed a motion and petition to vacate the adoption decree because of want of his consent thereto. Affirming an order of the court vacating the decree of adoption, this court said:

"When lawfully rendered, such a decree is manifestly a final adjudication of the status of the minor as to his or her future parentage, in the eyes of the law. The legal parentage of the minor is fixed and determined by such a decree. The parental rights of the natural parents are thereby extinguished and new parental rights substituted therefor. There is no continuing jurisdiction in the court over the cause or the parties to such a proceeding as in guardianship or divorce proceedings, which have to do only with the custody and care of a minor. The legal relationship thus created between a minor and its foster parent or parents ends only in death or another adoption proceeding, like the relationship existing between husband and wife, which ends only in death or a decree of divorce. . . . Until the consent of both living parents is given in the manner provided by our statute above quoted, or it is clearly shown that such consent is unnecessary, because of the existence of conditions specified in the statute, *the court has no discretion to act in the matter at all.*" (Italics ours.)

And further:

"But when we are reminded of the conclusive and far-reaching effect of an adoption decree and that it is not a mere custody decree, like in a guardianship or other similar proceeding, every consideration of fairness to the natural parents dictates that the provisions of our statute prescribing the conditions under which consent may be dispensed with should receive a strict construction. We are of the opinion that, to enable one parent having the custody and control of a child to effectually consent to its adoption by another, such custody and control must be of such an absolute and unconditional nature that the other parent's right in the child is extinguished, or the other parent's conduct is such as to estop him or her from asserting such right."

Expressions similar to those above quoted were made in the *Gustafson* case, *supra.*

Since J. Raymond Hope, to whom had been given the right of visitation of the minor children, did not give his written consent to their adoption by the respondent, the

court did not acquire jurisdiction to hear respondent's petition and therefore had no discretion to act in the matter at all.

Reversed, with direction to the trial court to vacate both the interlocutory decree of adoption and the final decree making it absolute.

MALLERY, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.