IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Adoption of Desiree N. Evans. | No. 81815-5-I |
| DESIREE N. EVANS, | DIVISION ONE |
| Respondent, | PUBLISHED OPINION |
| v. | |
| CAROL DUVEY, | |
| Appellant. | |

SMITH, J. — We are asked to determine whether Desiree Evans, n/k/a Desiree Gabel, has standing to challenge the adoption decree that followed the termination of her deceased biological father Phillip Duvey's parental rights. Following Phillip's death, Desiree moved to vacate the order terminating Phillip's right and the adoption decree entered in favor of her legal father, Richard Bishel.[1] The court found that the order of default terminating Phillip's parental rights and the decree of adoption were void and ordered that they be vacated. Phillip's mother, Carol Duvey, an intervenor in Desiree's legal action, appealed. Because Desiree lacks standing to bring an action to vacate the adoption decree based on the violation of Phillip's due process rights, we reverse the trial court's order.

FACTS

Desiree was born on April 5, 1984, to Cheryl Evans Bishel and Phillip.

_____
[1] We use each individual's first name for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

Richard and Cheryl, who married a year later, declared at the time that they did not know the identity of Desiree's natural father. However, recently, Cheryl admitted that she knew that Phillip was Desiree's father when she became pregnant. And following Phillip's death and in his possessions, Desiree found a photo of her as a baby that included a note from Carol suggesting that Phillip was Desiree's natural father.

In 1988, Richard sought to adopt Desiree. He filed an affidavit of service by registered mail of a notice of hearing on termination of parental rights to "John Doe, General Delivery, Seattle, WA." The Seattle Times printed and published a legal notice on August 25 and on September 1 and 8, 1988. The publication provided a notice of hearing on termination of parental rights for Desiree N. Evans. Eleven days after the last publication, the court terminated "John Doe's" parental rights with regard to Desiree (termination order). The same day, Bishel petitioned for adoption. The court granted Bishel's petition and entered a decree of adoption.

Desiree later declared that "[a]s far back as [she] can remember, Phillip was involved in [her] life." Indeed, Phillip had spent time with Desiree and her family. Desiree alleges that she maintained a familial relationship with Phillip and his family, including his mother.

Phillip died intestate on March 8, 2020, leaving behind no spouse or other children. Shortly thereafter, on March 19, 2020, Desiree filed a petition to open a probate proceeding and asked the court to name her as personal representative of Phillip's estate. Carol filed a motion to show cause, questioning whether

2

Desiree was Phillip's child. A posthumous DNA (deoxyribonucleic acid) test confirmed Phillip's paternity.

In July 2020, 32 years after the court entered the adoption decree, Desiree moved to vacate the termination order and the adoption decree under CR 60(b), alleging that Phillip was deprived of his due process rights flowing from her mother's fraud. Carol moved to intervene in Desiree's action. She sought to "protect [her] status as Phillip's heir." The court granted Carol's motion to intervene.

During the proceedings, Desiree declared, "I am not sure Phillip knew I had been adopted by Richard." However, Phillip's cousin and brother, Doug Duvey, declared that Phillip knew that Richard had adopted Desiree. Phillip's brother asserted that Phillip "was relieved about the adoption because he would not be financially responsible for Desiree." And Cheryl indicated that she had informed Phillip of the adoption as well.

In August 2020, the court granted Desiree's motion to vacate the termination order and the adoption decree, concluding that "Cheryl's fraudulent actions of intentionally concealing Phillip's known identity as Desiree's biological father and subsequent noncompliance with the adoption statutes regarding notice constitute due process violations to Phillip and Desiree." The court concluded that the termination order and the adoption decree were void pursuant to CR 60(b)(5), vacating each order.

Carol appeals the order vacating the adoption decree.

3

STANDING

The parties agree that the court violated Phillip's constitutional right to notice when it terminated his parental rights and entered the adoption decree. Accordingly, the termination order and adoption decree are void and subject to attack under CR 60(b). See In re Adoption of Blake, 21 Wn.2d 547, 551, 151 P.2d 825 (1944) (holding that an adoption decree entered without sufficient notice to the natural parent is void). Desiree asserts that she has standing to attack the adoption decree on Phillip's behalf.[2] But because Phillip no longer has an interest to protect by vacating the adoption decree, we disagree.

"Standing is a question of law, which we review de novo." In re Guardianship of Cobb, 172 Wn. App. 393, 401, 292 P.3d 772 (2012). "In general, a person lacks standing to vindicate the constitutional rights of a third party." Cobb, 172 Wn. App. at 401. But an individual may have standing where they satisfy a three-prong test. Specifically, the person asserting another's rights must show that "(1) the litigant has suffered an injury-in-fact, giving [them] a

---

[2] During oral argument, Desiree also asserted that because Carol does not challenge the termination order, we need not reach the issue of standing. Wash. Court of Appeals oral argument, In re the Interest of Desiree Evans v. Carol Duvey, No. 81815-5-I (June 2, 2021), at 8 min., 45 sec. through 9 mins., 4 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org. However, Desiree failed to adequately brief this assertion and did not address it below. And "[w]e will not consider arguments that a party fails to brief." See Sprague v. Spokane Valley Fire Dep't, 189 Wn.2d 858, 876, 409 P.3d 160 (2018) (refusing to address plaintiff's claims because he did not brief the claims and cited no law establishing them). Therefore, we do not need to address it here. Even so, the three-prong test in Cobb applies whether or not the termination decree was vacated because Desiree seeks to assert a third party's constitutional rights. See Cobb, 172 Wn. App. at 401 (holding that "a person lacks standing to vindicate the constitutional rights of a third party" unless they satisfy the three-part test).

sufficiently concrete interest in the outcome of the disputed issue; (2) the litigant has a close relationship to the third party; and (3) there exists some hindrance to the third party's ability to protect [their] own interests." Cobb, 172 Wn. App. at 401-02. "A litigant purporting to vindicate a third party's constitutional rights bears the burden of demonstrating that 'the allegedly injured third party lacks the ability to vindicate [their] rights.'" In re Guardianship of Decker, 188 Wn. App. 429, 445, 353 P.3d 669 (2015) (quoting Cobb, 172 Wn. App. at 403).

In applying the three-prong test, first, Desiree has a sufficiently concrete interest in that she stands to become Phillip's sole heir. Second, she had a close relationship with Phillip, whom she considered a father. Accordingly, Desiree succeeds on the first two prongs. She fails, however, to satisfy the third prong. There is no case in Washington that is directly on point.[3] However, a few cases

---

[3] Other states have addressed similar issues but have done so in relation to a state statute of limitations on the adoptee's or the natural parent's ability to challenge the adoption decree. See Hogue v. Olympic Bank, 76 Or. App. 17, 28, 708 P.2d 605 (1985) (holding that, although the adoption decree suffered from a jurisdictional defect, the statute finalizing adoption decrees did not violate due process rights, and that the statute of limitations on challenging the decree was valid and enforceable against a mother who did not consent to adoption and was not given notice of the adoption); see also In re Interest of C.G., 2015 COA 106, ¶ 23, 410 P.3d 596 (holding that a father whose parental rights were terminated without notice could challenge the order after the child died, and rejecting the assertion that the child's death made the father's claim moot "because the orders entered in the dependency and neglect proceeding impose a collateral consequence on father"). We have no similar statute of limitations in Washington.

California also has addressed this issue during probate proceedings. See, e.g., In re Estate of Hampton, 55 Cal. App. 2d 543, 568, 131 P.2d 565 (1942) (concluding that "'in the absence of some ground of estoppel, parties and their privies may collaterally impeach a judgment void on its face for lack of jurisdiction'" (quoting Mitchell v. Auto Owners Indem. Underwriters, 19 Cal. 2d 1, 7, 118 P.2d 815 (1941))); In re Estate of Martin, 86 Cal. App. 2d 474, 477, 195 P.2d 839 (1948) (applying Hampton and concluding that, even if the other state's

provide guidance as to when the third prong of the Cobb test for standing is satisfied.  And based on our review of these cases, we conclude that an adoptee may not directly challenge a facially void adoption decree on behalf of their deceased natural parent.

In Cobb, Sean Cobb was a legally incapacitated person whom his mother, with the help of his sister Lorraine, cared for until her death.  172 Wn. App. at 396.  Following his mother's death, Sean's siblings filed opposing motions to be appointed as his guardian.  Specifically, Lorraine moved to be his guardian, and two other siblings, Daniel and Christine, moved to have Daniel appointed as Sean's guardian.  Cobb, 172 Wn. App. at 396.  When the court granted Lorraine's motion and denied Daniel and Christine's, Daniel and Christine appealed.  Cobb, 172 Wn. App. at 401.  On appeal, Daniel and Christine attempted to assert due process violations on Sean's behalf.  Cobb, 172 Wn. App. at 401.  The court held that they did not satisfy the third prong for standing because they failed to show that Sean could not vindicate his rights through his appointed guardian, Lorraine.  Cobb, 172 Wn. App. at 403.

In In re Adoption of Hope, 30 Wn.2d 185, 188, 191 P.2d 289 (1948), Vera Stone Hope moved to vacate her mother Hazel Fennessey's adoption of Hope's two minor children, L.A.H. and D.H.  Hope alleged that Fennessey procured the

---

adoption statute did not require specific notice to the natural parent, because lack of adequate notice violates the parent's constitutional due process rights, the adoptee may collaterally attack the adoption decree on that basis in a probate proceeding); cf. In re Estate of Smith, 86 Cal. App. 2d 456, 468, 195 P.2d 842 (1948) (concluding that only those persons not served "actually or constructively" during the adoption proceeding and the adopted child may collaterally attack the adoption decree).

decree by fraudulent representation and without notice to the natural father. Hope, 30 Wn.2d at 188-89. The court held that under the statutory scheme controlling adoption proceedings and because the natural father "did not give his written consent to [the children's] adoption, . . . the court did not acquire jurisdiction to hear [Fennessey's adoption] petition." Hope, 30 Wn.2d at 193-94. On this basis, it allowed Hope to challenge the adoption petition and ordered the lower court to vacate it. Hope, 30 Wn.2d at 193-94. The court reasoned that the decree of adoption would be a final adjudication of the children's status "as to their future parentage and would terminate any parental rights heretofore granted to or enjoyed by the father." Hope, 30 Wn.2d at 192.

In Ludwig v. Department of Retirement Systems, 131 Wn. App. 379, 381-32, 127 P.3d 781 (2006), Ruth Timm granted Janet Ludwig what was, at the time, an irrevocable survivorship benefit from Timm's state pension. When the legislature amended the statute to allow the retiree to remove the survivorship, Timm elected to do so. Ludwig, 131 Wn. App. at 382. Following Timm's death, Ludwig sued, asserting that the amendment violated her vested right and Timm's constitutional rights. Ludwig, 131 Wn. App. at 383. In addressing Ludwig's latter assertion, the court concluded that Ludwig could not satisfy the last prong of the standing test because it was Timm's decision to invoke the provisions of the amendment and that, therefore, there was no hindrance to the assertion of Timm's rights. Ludwig, 131 Wn. App. at 385.

Here, unlike in Hope, vindication of Phillip's rights has no effect on him and offers no benefit to him. Indeed, Desiree asserts Phillip's rights for her

benefit.  While the mother in Hope certainly had selfish motivations when she moved to vacate the adoption decree, Hope alleged violations of the father's constitutional rights that had current and future ramifications for the children and the father.  In contrast, Desiree will be the only beneficiary to vindication of Phillip's rights in this case.  In addition, like the decedent in Ludwig, Phillip could have asserted his rights while he was alive.  Indeed, according to his brother's affidavit, Phillip was glad that he was not the legal parent of Desiree.  We will not speculate as to whether Phillip would have asserted his right to notice in order to vacate the adoption decree prior to his death when he could have done so at any time before his passing and where he made Desiree the beneficiary of his retirement and pension accounts and a life insurance policy.  And similar to Sean's ability to assert his rights through his guardian in Cobb, Phillip's estate is not hindered from asserting Phillip's rights, which it determines should be asserted for the benefit of the estate.

In cases where the court has allowed a due process challenge to an adoption decree, the children were minors, and the court focused on the natural parent's right to create a relationship with their minor children.  See, e.g., In re Adoption of Hickey, 18 Wn. App. 259, 261-62, 567 P.2d 260 (1977) (holding that the trial court had jurisdiction to hear the natural father's motion to vacate the adoption decree where the father was not provided constitutional notice and the children were minors); cf. Blake, 21 Wn.2d at 552 (relying on statute to conclude that the father could not challenge the order of adoption where the minor child's mother has "not legitimized" his parentage).  That is clearly not the case here.

Thus, we conclude that Desiree lacks standing to directly attack the adoption decree because Desiree has not articulated any current interest that Phillip has in asserting his constitutional right to a parental relationship with Desiree. Indeed, the only interest that the adoption decree now affects is Desiree's right to inherit Phillip's estate, and her challenge to the decree is solely for her benefit. Thus, Desiree did not have standing to bring an action to challenge the adoption decree, and the trial court erred in vacating it.[4]

Desiree disagrees and relies on In re Estate of Couch, 45 Wn. App. 631, 726 P.2d 1007 (1986), to support her position that she can challenge the adoption decree. There, Reba Grady, a biological daughter of the decedent, sought to vacate an adoption decree entered in Oklahoma. Couch, 45 Wn. App. at 632. The Oklahoma court granted her request, finding the decree facially invalid presumably for lack of notice. Couch, 45 Wn. App. at 632. In the Washington probate proceedings, Grady moved to receive a portion of her biological father's estate. Couch, 45 Wn. App. at 632. Couch's legal children moved to dismiss Grady's claim, and the trial court granted their motion. Couch, 45 Wn. App. at 632. On appeal, the court reversed the trial court's decision and concluded that the trial court was required to give Oklahoma's decision full faith and credit, thereby acknowledging that Grady was legally Couch's heir. Couch,

---

[4] Carol relies on RCW 26.33.260(3)(a) to support her assertion that an adoption decree cannot be vacated due to procedural deficiencies or errors. But "a party alleging a constitutional violation necessarily presents sufficient grounds for challenging an adoption decree under RCW 26.33.260." In re Adoption of R.L.M., 138 Wn. App. 276, 284, 156 P.3d 940 (2007). And because Desiree challenged the decree on constitutional due process bases, RCW 26.33.260(3)(a) does not bar her claim.

45 Wn. App. at 634. In Couch, we did not review whether the adoptee had standing to challenge the decree; here, this court must determine whether Desiree has standing. Thus, Couch is not analogous.

Finally, Desiree emphasizes her contention that Phillip did not know of the adoption decree to support her assertion that the decree is void. However, the evidence does not necessarily lead to the conclusion that Phillip was unaware that his parental rights were terminated. Rather, multiple affidavits state that Phillip knew that Richard adopted Desiree, and the trial court made no conflicting findings. Nonetheless, Phillip's knowledge of the decree prior to his death is immaterial to our analysis of standing: even if the decree is void, someone with authority to challenge it must seek to vacate it in court. And because Desiree cannot show that there is some hindrance to the protection of Phillip's interests and that he has an interest in vacating the adoption decree following his death, she may not bring Phillip's constitutional challenge to the adoption decree.[5]

---

[5] Desiree's statement of additional authorities are not persuasive here. See, e.g., In re Parentage of Calcaterra, 114 Wn. App. 127, 128, 56 P.3d 1003 (2002) (holding that a child, no matter their age, "has a constitutionally protected interest in an accurate determination of paternity"); Gonzales v. Cowen, 76 Wn. App. 277, 884 P.2d 19 (1994) (denying a putative father's attempt to establish paternity and to inherent from his child's estate).

We reverse.

_____

WE CONCUR:


_____     _____
Chun, J.                    Mann, C.J.