[No. 15579.   Department One.   February 9, 1920.]

FRANK PLATT, *Respondent,* v. JOSEPH MAGAGNINI *et al.,*
*Appellants.*[1]

APPEARANCE (8)—EFFECT OF GENERAL APPEARANCE AFTER SPECIAL APPEARANCE. Upon an appeal from the vacation of an order of adoption, respondent's general appearance in the supreme court without reserving a special appearance made below waives objections to the service of process, and confers jurisdiction to hear and determine the matter *de novo.*

ADOPTION (9)—SETTING ASIDE OR REVOKING ADOPTION—FRAUD. An order of adoption may be vacated for fraud, and is not subject to the rule in adversary proceedings that the fraud must be such as does not inhere in the judgment.

SAME (9)—SETTING ASIDE—PARTIES ENTITLED. An heir of the adopted child may, subsequent to its death, make a direct attack for fraud upon the order of adoption where the court proceeded without jurisdiction.

SAME (9) — SETTING ASIDE — JURISDICTION —"INHABITANT"— PRESUMPTION. Under Rem. Code, § 1698, requiring an order of adoption to set forth the facts, and the statute providing that "any inhabitant" of the state may petition for leave to adopt, the jurisdictional fact as to the petitioner's residence cannot be presumed where the petition did not recite, and the order did not find, that the adopting parents were inhabitants.

SAME (9)—DOMICILE (2, 3)—PETITIONER—INHABITANT. A petitioner for the adoption of a child is shown to be an inhabitant of another state where, prior to the adoption, he had gone to such other state and received the donation of a site with intent to remain there in business, and had incorporated a company the articles of which recited he was an inhabitant of such state, and he returned there to reside after the adoption.

SAME (9)—SETTING ASIDE—FRAUD—EVIDENCE—SUFFICIENCY. The adoption of an orphan is shown to have been a fraud on the court for the purpose of becoming heirs to its estate, where it appears that the child was seriously ill with tuberculosis and was expected to live but a short time, and the adopters contributed nothing to its support and did not have its custody or contemplate giving it a home.

[1] Reported in 187 Pac. 716.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered October 25, 1918, setting aside adoption proceedings, after a hearing on the merits.  Affirmed.

*J. H. Gordon,* for appellants.

*S. A. Gagliardi* and *H. H. Johnston,* for respondent.

MAIN, J. — The purpose of this action was to set aside an order of adoption.  The cause was tried before the same judge of the superior court who had previously entered the order of adoption, and resulted in a judgment vacating and setting aside that order. From this judgment, the defendants, the parents by adoption, appeal.

The appellants are husband and wife and for some years prior to 1916 resided in Tacoma.  The respondent was the grandfather of Adele Magagnini, the child which the appellants adopted, and he also resided in the city of Tacoma.  The order of adoption was entered on the 31st day of October, 1916.  The child's natural parents had both died in Italy in 1910 when it was about one year of age.  The father of the child was an uncle of the appellant Joseph Magagnini.  Before he died and during his last illness, he wrote Mr. Magagnini requesting him, in the event of his death, to look after his wife and child.  Some time after the letter was received, Joseph Magagnini received a cablegram stating that Oreste Magagnini, the child's father, had died in Italy.  Thereafter he started to Italy, and before he reached there the mother died.  He settled up the affairs of the deceased parents and returned to Tacoma, bringing the child with him or causing her to be brought.  For about a year thereafter, the child lived in the home and was taken care of by the appellants.  In 1911, upon the advice of a physician, the

child was placed in the care and custody of Mrs. Martha Warner, who resided on Anderson Island, near Tacoma. The reason for this change was that the child was delicate and had symptoms of tuberculosis, a disease of which both of its parents had died, and the attending physician thought that the country would be better for it than the city. Subsequent to this time, Mr. Magagnini was appointed guardian of the child's estate. The child remained in the care and custody of Mrs. Warner until its death.

On July 6, 1916, Mr. Magagnini, with his only son and two other men, went to Great Falls, Montana, for the purpose of establishing a macaroni factory. After reaching Montana, they incorporated a company by which the business was to be transacted. The citizens of Montana raised money for the purchase of a site for the factory and donated it. In September Mr. Magagnini returned to Tacoma, where he remained about fifteen days. During this time he was present when a physician there who was a specialist in pulmonary diseases examined the child, and was told by the physician that it was very ill. He returned to Montana and received a letter from the physician advising him as to his conclusions as to the child's illness after a further examination. In this letter it is stated: "Your little girl has tuberculosis. It is a serious case, not entirely hopeless, but the chances are against her."

In October, Mr. Magagnini returned to Tacoma, and he, with his wife, made application to the superior court to adopt the child, and an order of adoption was entered, as above stated, on October 31, 1916. Prior to the time of this adoption, the relations between Mr. and Mrs. Magagnini had been somewhat estranged. The day following the adoption, Mrs. Magagnini, with the two daughters of herself and Mr. Magagnini, left for Chicago, where her mother resided. On Novem-

ber 3, Mr. Magagnini returned to Great Falls. The child was not brought into court at the time of adoption, neither did Mrs. Warner have any notice or knowledge of the proceeding at that time. One Paul Lippi, a close friend of Mr. Magagnini, signed the consent to adoption as the next friend of the child. He did not appear in court at the time of the adoption proceedings. Mrs. Magagnini remained in Chicago for about six months, when she went to Great Falls, but at no time since the adoption proceedings have she and Mr. Magagnini lived together. Adele Magagnini died of tuberculosis on the 20th day of November, 1917. Thereafter the respondent brought this action to set the adoption proceedings aside, alleging, in substance, that Mr. Magagnini was not an inhabitant of Pierce county, this state, at the time of the adoption, as the statute requires, and that the application for adoption was for the purpose of placing the appellants in *loco parenti* in order that they might inherit the estate of the child, and for no other purpose.

Process was served personally upon the appellants in Great Falls, Montana. They appeared specially and moved to quash the service. This motion was overruled and the special appearance was preserved throughout the proceedings in the superior court, which resulted, as above indicated, in a judgment vacating the order of adoption.

It is first claimed that, by personal service upon the appellants in Montana, which, under the statute, would only amount to constructive service, no jurisdiction was required to hear the cause. It is unnecessary to pursue the argument of the respective parties upon this question. In this court the appellants have made a general appearance without alluding to or preserving the special appearance which they had maintained in the superior court. By virtue of this general ap-

pearance this court has acquired jurisdiction to hear and determine the matter, which is tried here *de novo.* In *Columbia & Puget Sound R. Co. v. Moss,* 53 Wash. 512, 102 Pac. 439, it is said:                          -

"On the former appeal this appellant entered a general appearance in this court without reserving or alluding to his special appearance. By virtue of that appeal this court acquired full and complete jurisdiction over the subject-matter of the action and the parties to the appeal, and might affirm, reverse, or modify the judgment appealed from, or direct the proper judgment to be entered, or direct a new trial or further proceedings to be had."

Upon the merits the appellants contend that there was no evidence tending to show that the decree of adoption was obtained by fraud, and if there was evidence of fraud it was such as inhered in the order of adoption and was not such as would justify the vacating or setting aside of the order.

The right of adoption did not exist in common law, but is permitted in this state by statute. Rem. Code, ch. 22, § 1696 *et seq.* The statute makes no provision for notice in case of adoption, but requires that written consent must be given to such adoption by the child if of the age of fourteen years, and by each of his or her living parents. It further provides that, if the parents are dead or for any of the reasons specified by the statute their signature is not necessary, and if there is no legal guardian, then the consent may be given by a discreet and suitable person appointed by the court to act in the proceeding as the next friend of the child.

The appellants invoke the general rule which is applied in adversary proceedings and in proceedings where decrees or judgments are entered upon due notice as provided by statute, which rule is that the fraud which will authorize the vacating and setting aside of

the judgment must be such as does not inhere in the judgment but which is extrinsic or collateral to the matter first tried. *United States v. Throckmorton,* 98 U. S. 61; *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647. But that rule is not applicable to an order of adoption because the power of the court to enter such an order is special and is not exercised according to the course of the common law. It is not an adversary proceeding, nor is it an order entered upon notice provided by statute. In *Ex parte Clark,* 87 Cal. 638, 25 Pac. 967, upon this question it is said:

"It has been held—and we think correctly—that, in cases of this kind, the power of the court being special, and not exercised according to the course of the common law, its decisions must be regarded and treated like those of courts of limited and special jurisdiction; and that jurisdiction in such cases, although the court be one of general jurisdiction, must appear by the record, as to both subject matter and the person."

It must be remembered that this is not a collateral but a direct attack upon the order of adoption. The case of *Wilson v. Otis,* 71 N. H. 483, 53 Atl. 439, 93 Am. St. 564, was where the order was attacked collaterally and therefore is not in point. In a direct proceeding such as this, where it is charged that the court proceeded without jurisdiction and that the order of adoption was obtained by fraud, the matter may be inquired into in an action by an heir of the adopted child subsequent to its death. In *Phillips v. Chase,* 203 Mass. 556, 89 N. E. 1049, 30 L. R. A. (N. S.) 159, the decree of adoption was entered on April 23, 1899. In that proceeding, DeForest Woodruff Chase, son of her husband by a former wife, became the adopted son of Mrs. Chase. On September 13, 1905, Mrs. Chase died. Shortly thereafter a petition was filed by those who, but for the adoption, would be the next of kin, to set

aside such decree. On December 19, 1905, while the action to vacate the adoption order was still pending, DeForest Chase, the adopted son, died. Thereafter the action proceeded to judgment. In that case it appears that Mrs. Chase was so dominated by her husband as practically to force her against her will to bring a petition for adoption by her of his son by a former wife. It was there held that an adoption brought about in such a manner was a fraud upon the court and should be set aside. It was said:

"We are of the opinion that if one so dominates his wife's will as to force her against her will to bring a petition in court for the adoption by her of his son by a former wife, he commits a gross fraud upon his wife and such a fraud upon the court that the decree of adoption should be set aside in a proper case."

In the course of the opinion it was further said:

"It is not necessary in the case at bar to go so far as the court went in those cases, for it is plain that the appellant here procured the adoption in order to secure his wife's property for his son, thinking that if his son got the property he would benefit thereby. That is enough to bring the case within this doctrine if it is not enough that the adoption was procured through his fraud and the property has now come to him."

It is further claimed that, if Mr. Magagnini was not an inhabitant of the state, this jurisdictional defect was one which would inhere in the judgment or order of adoption and could not be subsequently inquired into; in other words, that, it being a question upon which the court was required to pass in the adoption proceedings, it would be presumed that all jurisdictional facts were made to appear. It will be assumed, but not decided, that such would be the rule where the judgment is entered according to the course of the common law, or where a judgment is entered

after notice as provided by statute; but it does not follow that, in a proceeding of this kind, the rule would be applicable.

The complaint alleged as one of the reasons for setting aside the decree of adoption that the court had there proceeded without acquiring jurisdiction. The particular jurisdictional defect charged was that Mr. Magagnini, at the time of the adoption, was not an inhabitant of Pierce county, this state. The statute provides that ''any inhabitant of this state not married, or any husband and wife jointly, may petition the superior court of their proper county for leave to adopt . . .'' Construing this statute in *Knight v. Gallaway*, 42 Wash. 413, 85 Pac. 21, it was held that the court had no jurisdiction to entertain a petition for the adoption of a child by persons not inhabitants of the county in which the application was made. The answer to the appellants' position on this question is that the petition for adoption did not recite, and the order did not find that the adopting parents were inhabitants of Pierce county. The statute (Rem. Code, § 1698) requires that the order of adoption shall set forth the facts. Under this state of the record, it cannot be held that the jurisdictional facts would be conclusively presumed in an action of this kind, which is a direct proceeding to vacate the order of adoption. In Black, Judgments, vol. 1, § 279, it is said:

''And first, it is an established rule that when a court of general jurisdiction has special and statutory powers conferred upon it, which are wholly derived from statute, and not exercised according to the course of the common law, or are not part of its general jurisdiction, it is to be regarded as *quoad hoc* an inferior or limited court, and its judgments to be treated accordingly, that is, its jurisdiction must appear on the record and cannot be presumed.''

The word "inhabit" has been many times defined
by the courts and has been given different shades of
meaning. One of the necessary elements in its signi-
fication is "locality of existence." In this case, the
evidence shows that Mr. Magagnini, prior to the adop-
tion, had gone to Great Falls, Montana, for the pur-
pose of going into business there, had incorporated a
company, had received the donation of a site from the
citizens of that city. While in Great Falls, and before
the adoption, Mr. Magagnini, in the articles of incor-
poration of his company, recited that he was a resident
of that state, and, in making a report upon the com-
pany there at a subsequent time, recited the same fact.
After the adoption, he returned to Great Falls and in-
tended to reside there. He testified that, when he re-
ceived the donation of the site, he had an intention to
stay in that city and run the factory. It is plain that,
at the time of the adoption, he was not an inhabitant of
this state, within the meaning of the word as used in
the statute.

It is further argued that, considering the trial of
the case here as a trial *de novo,* the evidence in the
record does not justify a court of equity in setting aside
the adoption order. In addition to the facts already
stated, it appears that, at all times, Mrs. Warner was
paid for the care and custody of the child out of its
estate. The appellants contributed nothing to its
maintenance and support, either before or after the
adoption proceeding. The expenses of at least one of
the trips which Mr. Magagnini made to Tacoma after
going to Great Falls was charged to the child's estate.
The appellants knew at the time of the adoption that
the child was seriously ill and that the probabilities
were that its life would not be prolonged for a great
length of time. They did not then contemplate, and
did not in fact give it, a home and render it that

parental care and affection which it is contemplated will follow in all adoption proceedings. A reading of the record leads irresistibly to the conclusion that the only purpose of the adoption was that the appellants might be placed in position that, upon the death of the child, they would become heirs to its estate. To secure an adoption under such circumstances and for such purpose is to work a fraud upon the court, which, under the statute, is to exercise a wise discretion in determining whether the order of adoption shall be entered. It is inconceivable that a judge of the superior court would have entered the order of adoption in this case had he been fully advised as to the facts. It is true that, after an adoption has once occurred, the court has no continuing discretion to set it aside. *In re Lease,* 99 Wash. 413, 169 Pac. 816. When an order of adoption is set aside, it must be as a matter of right and not as a matter of discretion. In this case the respondent was entitled to have the order vacated as a matter of right.

The judgment will be affirmed.

Holcomb, C. J., Parker, Mackintosh, and Mitchell, JJ., concur.