[No. 21920. Department Two. August 2, 1929.]

*In the Matter of the Adoption of* JACK ALBERT NELMS. ROY FRANCIS NELMS *et al., Respondents,* v. ALBERT BIRKLAND *et al., Appellants.*[1]

*Danson, Lowe & Danson,* for appellants.

*E. O. Connor* and *Kimball & Blake,* for respondents.

MAIN, J.—This is an appeal from a judgment in an adoption proceeding.

[1]Reported in 279 Pac. 748.

Jack Albert Nelms was born out of wedlock May 15, 1919, in the city of Spokane. On the same day the child's mother signed this writing:

"Spokane, Wash.
"May 15, 1919.

"This is to certify that I, Bertyne Oliver, the undersigned, being of sound mind and having my right senses on this fifteenth day of May, nineteen hundred and nineteen, give to Mr. and Mrs. Roy F. Nelms my baby for adoption. Signed Bertyne Oliver.
"(Witnesses) Mary Swartz
"Mrs. Lucie Willard."

On the same day, the child was given into the custody of Mr. and Mrs. Nelms, where he has continuously remained. August 29, 1919, Albert Birkland and Bertyne Birkland, the father and mother of the child, were married. They at that time resided in the state of South Dakota, and they have continuously resided there up to the present time. Mr. and Mrs. Nelms are residents of the city of Spokane. In December, 1925, Mrs. Birkland came to Spokane to visit the child, and had some conversation with Mr. and Mrs. Nelms. She again came in May, 1926. As to what took place upon these visits, the testimony is in conflict. During the latter part of the year 1927, Mr. and Mrs. Birkland both came to Spokane and, at this time, made known to the Nelms that they were going to take the custody and control of the child, if Mrs. Birkland had not upon the prior visits. Mr. and Mrs. Nelms, becoming alarmed, filed a petition for adoption based upon the consent given by the mother in May, 1919, above set out. An order of adoption was entered January 11, 1928. January 27, 1928, Mr. and Mrs. Birkland filed a petition to vacate the order of adoption. This was resisted by Mr. and Mrs. Nelms. A hearing was had and the court entered an order vacating the adoption because improperly obtained. Thereafter an amended

petition of adoption was filed by Mr. and Mrs. Nelms, which was resisted by Mr. and Mrs. Birkland. The trial resulted in a holding by the superior court that Mr. and Mrs. Nelms were entitled to adopt the child, and from the order of adoption, Mr. and Mrs. Birkland have appealed.

There can be no adoption of a child in the absence of a statute. This is something that was not known to the common law. In *In re Renton's Estate,* 10 Wash. 533, 39 Pac. 145, it was said:

"Without a statute, or without compliance with a statute, there is no such thing in our law as the adoption of an heir. Adoption was not known to the common law, and is a matter purely statutory. Courts have passed upon this question frequently, and have adhered with much strictness to this rule." (Citing authorities.)

Rem. 1927 Sup., § 1696, provides:

"Any inhabitant of this state, not married, or any husband or wife jointly, may petition the superior court of the county of their residence for leave to adopt, and change the name if desired, of any person, but a written consent must be given to such adoption by the person, if of the age of fourteen years, and if under the age of twenty-one years by each of his or her living parents, or in case the child be illegitimate, by his or her living mother; Provided, that the consent of the parent shall not be required in the following cases, to wit: . . .

"4. From a father, or mother, who has been found by a court of competent jurisdiction to have deserted or abandoned such child without provision for his or her identification. . . ."

It will be observed that this statute specifically requires that, in the case of a child born out of wedlock, written consent to an adoption must be given by the mother. The proviso, that the consent of the parent shall not be required where the father or mother

of the child has been found by a court of competent jurisdiction to have deserted or abandoned the child without provision for his or her identification, has no application to the present case. The mother in this case expressly gave a written consent, and the claimed right of adoption was based upon that. From the facts stated and from others that appear in the record, it is clear that, prior to the time that the petition for adoption was first filed, the written consent given by the mother had been revoked, and this she had a right to do prior to the time that a legal adoption was made, assuming, without so deciding, that the written consent satisfied the requirement of the statute. In 1 C. J., p. 1378, it is said:

"A natural parent, by entering into a contract for the adoption of his child by another, waives his right to the custody and control of the child; but, subject to his liability to be sued for breach of his contract, he may revoke his gift and resume custody of his child at any time before a legal adoption has been made."

The written consent having been revoked, it is plain that the necessary statutory requirement, to enable the court to enter a legal order of adoption, has not been complied with. The extinguishment of the rights of the natural parents to the custody and control of their child is not a matter of discretion on the part of the court. Before the natural parents' right to the custody and control of their child can be extinguished, the statutory requirements must be complied with. If the statutory requirements are complied with, then it becomes a matter of discretion as to the propriety of the proposed adoption, and the question of the moral, intellectual and material welfare of the child becomes a matter for the court to take into consideration. In *In re Lease,* 99 Wash. 413, 169 Pac. 816, it is said:

"The legal parentage of a child is not, and cannot be, lawfully changed under our laws as a matter of the court's discretion, in so far as the consent of the minor's parents is concerned. Until the consent of both living parents is given in the manner provided by our statute above quoted, or it is clearly shown that such consent is unnecessary, because of the existence of conditions specified in the statute, the court has no discretion to act in the matter at all. Of course, when the required consent is once given, or the substituted conditions dispensing with consent are clearly made to appear, the court then does have discretion to determine the question of the 'propriety of such adoption,' using the language of Remington & Ballinger's Code, § 1698. Then only is the question of the moral, intellectual and material welfare of the minor of any concern to the court. The court's discretion has to do only with the question of who the new parent shall be, and has nothing to do with the extinguishment of the rights of the natural parents. That which we desire to emphasize here is that the question of the change of legal parentage of a minor by adoption is quite a different matter from that of a court deciding, as a matter of discretion, who shall have the custody and control of a minor. The former is not a matter of discretion at all, but a matter of consent, or the existence of conditions rendering consent unnecessary."

The written consent in the present case having been revoked prior to the time that any legal adoption took place, and there being no other conditions which would authorize the court to extinguish the rights of the natural parents to the custody and control of their child, there is no legal basis under the statute to sustain the adoption order.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment giving the custody and control of Jack Albert Nelms to his natural parents, Albert Birkland and Bertyne Birkland.

MILLARD, PARKER, TOLMAN, and FRENCH, JJ., concur.