[No. 35621. *En Banc.* August 24, 1961.]

GINETTE J. TAYLOR, *Respondent,* v. IRA W. TAYLOR, *Appellant.**

*Irene Rush Ferris* and *Donna McArthur,* for appellant.

*Jonson & Jonson* and *Constance Canfield,* for respondent.

FOSTER, J.—The appellant husband appeals from that portion of a divorce judgment which orders him to support Phillip, born in France, the natural son of the respondent wife, a French national, and an American soldier. Before the marriage in France, appellant executed documents before French officials which formally, though falsely, acknowledged that Phillip was his son. Consequently, Phillip was recorded as legitimate in the French records, his birth certificate was reissued in appellant's name, and Phillip's name was entered in the family book of the parties which recorded their marriage.

*Reported in 364 P. (2d) 444.

When appellant returned to the United States, he planned for respondent and Phillip to join him. Respondent entered this country as a nonquota alien, but, since Phillip was not the appellant's natural son, he was subject to the quota limitations which prescribed a one-year waiting period before entry would be permitted. To achieve immediate entry, respondent informed the American Embassy in Paris that Phillip's natural father was an American and that Phillip, therefore, claimed quota exemption, which was granted upon appellant's sponsorship of Phillip. His passport was issued, and respondent and Phillip joined appellant in Seattle in December, 1952.

The Taylors lived together as a family from 1952 to 1959, during which period appellant treated Phillip as his son. He claimed him as a son on his tax returns and on his applications for allowances when he taught at a United States Government dependent school in Japan. Phillip used appellant's surname without objection from appellant, and appellant in all respects acted as Phillip's father but did not legally adopt him.

The trial court concluded that Phillip was legally adopted in France by the appellant. The undisputed facts show this conclusion to be erroneous. When appellant met the respondent, her illegitimate son was six years old, and the appellant was less than forty. In order to effect an adoption, the adoptive parent must, under French law, be over forty years of age,[1] and the adopted child must be less than five years of age.[2]

 Adoption is a creature of statute, and the court's

---

[1] "Adoption is permissible only for persons of either sex who are over forty years old. However, it may be requested jointly by a couple who are living together, if one of the spouses is over age thirty-five, provided they have been married for more than ten years and have remained childless." French Civil Code, Book I, Title 8, Article 344.

[2] "Adoptive legitimation is allowed only in favor of children less than five years of age whose parents have abandoned them, are unknown or deceased. It may be requested jointly only by a married couple, not separated and of the age specified in Art. 344, and who have no children or legitimate descendants. . . ." French Civil Code, Book I, Title 8, Article 368.

authority must be measured by statutory law. *In re Adoption of Reinius,* 55 Wn. (2d) 117, 346 P. (2d) 672; *In re Smith's Estate,* 49 Wn. (2d) 229, 299 P. (2d) 550, 63 A. L. R. (2d) 299; *In re Adoption of Hope,* 30 Wn. (2d) 185, 191 P. (2d) 289; *In re Adoption of Sipes,* 24 Wn. (2d) 603, 167 P. (2d) 139; *In re Adoption of Blake,* 21 Wn. (2d) 547, 151 P. (2d) 825; *State ex rel. Van Cleave v. Frater,* 21 Wn. (2d) 231, 150 P. (2d) 391; *In re Adoption and Change of Name of a Minor,* 191 Wash. 452, 71 P. (2d) 385; *In re Nelms,* 153 Wash. 242, 279 Pac. 748; *In re Reimer's Estate,* 145 Wash. 172, 259 Pac. 32; *Platt v. Magagnini,* 110 Wash. 39, 187 Pac. 716. The French proceedings, being directly contrary to French statutes, are, therefore, void. The court's conclusion that there was a valid French adoption is, therefore, erroneous.

It is, nevertheless, true beyond cavil that, from the time of the marriage of the parties until their separation just prior to the divorce, appellant stood *in loco parentis* to the child. That term is defined as follows:

"In the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities. . . ." Black's Law Dictionary (4th ed.), 896.

A person while standing *in loco parentis* is bound to support and educate the child. 67 C. J. S. 805, 806, § 73b. However, it is "a somewhat nebulous legal relationship of a temporary character dependent on the intention of the party assuming the obligations of a parent." *Cooley v. Washington* (Mun. Ct. App. D. C.), 136 A. (2d) 583, 585.

The decisive issue, therefore, is whether such bonds can be dissolved. An intermediate Ohio appellate court in *Gustin v. Gustin,* 108 Ohio App. 171, 161 N. E. (2d) 68, decided against such termination[3] because under the Ohio

---

[3] ". . . In the early case of *Miller v. Anderson,* the husband married the woman knowing that she was pregnant by another. The court held that the mother could not maintain a paternity action against the natural father, at least not solely on her uncorroborated testimony. The court stated in dictum that for purposes other than heirship, the child would be deemed to be the legitimate child of the husband, who, by his marriage with notice of the pregnancy, was estopped to deny paternity. In *Gustin v. Gustin,* involving a similar set of facts, the

statute the husband by the marriage deprived the wife of the right to proceed against the father for the child's support. But there is nothing in the record now under review which precludes the respondent from proceeding against Phillip's father for his support.

The prevailing law in the United States is stated by the supreme court of Iowa in *State ex rel. Gilman v. Bacon,* 249 Iowa 1233, 91 N. W. (2d) 395, 399, as follows:

" . . . One important qualification is that one merely standing in the place of a parent may abandon the burdens attendant upon such status at any time. 67 C. J. S., Parent and Child, section 80, pages 808, 809; *Menefee v. Chesley,* 98 Iowa 55, 59, 66 N. W. 1038, 1040. In *McDonald v. Texas Employers' Insurance Assn.,* Tex. Civ. App., 267 S. W. 1074, 1076, it is said: ' * * * the status of one in loco parentis is temporary, and may be abrogated at will by either the person thus standing in loco parentis or by the child.' To the same effect is this language from *In re Estate of McCardle,* 95 Colo. 250, 252, 35 P. 2d 850, 851: 'It [loco parentis] is not, as argued, to be likened to adoption. The one is temporary in character, the other permanent and abiding.' See also *Schneider v. Schneider,* 25 N. J. Misc. 180, 52 A. 2d 564, 566."

Accord: *Franklin v. Franklin,* 75 Ariz. 151, 253 P. (2d) 337; *Clevenger v. Clevenger,* 11 Cal. Rptr. 707, 189 Cal. App. (2d) 716.

The court erred in entering judgment against the appellant for the support of the respondent's illegitimate son and the judgment is reversed.

ALL CONCUR.

---

court of appeals applied the dictum of the *Miller* case and held the husband liable for support of the child." 11 Western Reserve L. Rev. 376, 377.