497 S.W.2d 840 (1973)
L . . ., Plaintiff-Appellant,
v.
L . . ., Defendant-Respondent.
No. KCD26232.
Missouri Court of Appeals, Kansas City District.
July 23, 1973.
C. B. Fitzgerald, Warrensburg, for plaintiff-appellant.
Ike Skelton, Jr., Lexington, for defendant-respondent.
Before WASSERSTROM, P. J., and SHANGLER and SWOFFORD, JJ.
WASSERSTROM, Presiding Judge.
In this divorce suit, the wife was granted a divorce, custody of a minor child, and an award of $50.00 per month child support. The husband appeals, with his sole point of error being the contention that no child support should have been awarded because he concededly was not the biological father.
These two young people met in California in February, 1968, while the husband was in active Navy service. Within a week thereafter, on February 10, 1968, they were married. At the time they first met, the wife was four to five months pregnant by another man, and her abdomen was visibly protruding. The husband was fully aware of that state of pregnancy, and this was a matter of discussion between them. When the husband proposed marriage, the wife brought up the question very pointedly, the discussion between the parties according to her testimony being as follows: "I said, `Well, if we get married, I don't want you tothrowing that up to me that she doesn't belong to you.' He said, no, he wouldn't do that because since she wasn't born yet, it wouldn't make any difference, because if it had been a few months sooner, it could have been ours, you know." The wife further testified that the husband at that time promised that "he would recognize the child as his" and he further said both before and after the *841 marriage that "he would treat the child as his". The husband admitted in his testimony that he made this promise both before and after the marriage.
The child was born July 16, 1968. Pursuant to prior conversations between the parties, the child was given the husband's name and the husband was shown as the father on the birth certificate. The husband knew that this would be done, he made no objection, and indeed, after the birth he introduced the child to others as his daughter.
Shortly after the marriage and until either immediately before or immediately after the birth, the husband had been transferred in the course of his Naval service to Philadelphia. However, he came back to California at about the time of the birth and visited both his wife and the child in the hospital. Thereafter, the parties lived together in California as husband and wife at interrupted intervals, the interruptions being caused by the husband's sea duty.
The husband was released from active service in October, 1970, and he insisted on returning to his family's home in Missouri. The wife followed shortly thereafter in November, 1970. The husband appeared resistent to taking a regular job, he was not interested in establishing a home for his wife, and he stated to her that he did not want to be married. He went out on dates with other women and freely admitted that to the wife. Within a short time the parties separated, and the situation eventually resulted in the filing of this divorce action.
No Missouri appellate court has passed upon the question of whether a husband in a divorce suit under these circumstances may be ordered to support a child born during the marriage, but concededly not fathered by him. However, there have been a number of decisions on this problem in other jurisdictions, with conflicting results. The cases on the subject are collected in an annotation "Liability of mother's husband, not the father of her illegitimate child, for its support", 90 A.L.R.2d 583. On one side of the issue are decisions from Ohio and Iowa holding that in order for the husband to be bound to support the child, it is only necessary to show that he entered into the marriage with knowledge that his prospective wife was at that time pregnant by another man. Gustin v. Gustin, 108 Ohio App. 171, 161 N.E.2d 68 (1958); State v. Shoemaker, 62 Iowa 343, 17 N.W. 589 (1883). Cf. Belk v. Belk, 13 Ohio App.2d 212, 235 N.E.2d 530 (1968). On the other hand, that view has been expressly rejected in North Dakota, Illinois, Oregon and Washington. Kucera v. Kucera, 117 N.W.2d 810 (N.D.1962); People v. Gleason, 211 Ill.App. 380 (1918); Burke v. Burke, 216 Or. 691, 340 P.2d 948 (1959); Farris v. Farris, 58 Wash.2d 837, 365 P.2d 14 (1961); Taylor v. Taylor, 58 Wash.2d 510, 364 P.2d 444 (1961).
A particularly careful study of this subject was made by a California court in Clevenger v. Clevenger, 189 Cal.App.2d 658, 11 Cal.Rptr. 707 (1961), reaching an attractive intermediate position. The court started with what may be called a general rule that a husband does not assume a continuing and irrevocable obligation to support another man's child merely by entering into marriage with the mother. While the husband by the marriage does step into "the relation of step-father to the child and therefore becomes liable for his support," that obligation is only concurrent with the life of the relationship, and "the obligation assumed by a step-parent to support a step-child is not a continuing one, but may be abandoned at any time * * * and ordinarily ceases with the divorce of the step-parent * * *". The court, however, went on to outline certain exceptions under which the husband may become bound beyond that limited liability. One of those exceptions is an express contractual assumption by the husband of a continuing obligation to support. Another exception would arise under facts sufficient to create *842 an estoppel. Although the court ruled that sufficient facts had not been shown at the original trial of the Clevenger case to support either of those theories, the court remanded the case for retrial to give the mother an opportunity to introduce further evidence on these issues. In this connection the court held:
"We have probed the novel problem of the liability of the putative father for the support of the child he has acknowledged and accepted. We have laid out the lines of possible liability. We are compelled to hold that such liability has not been shown in this record, but we have indicated that, if upon retrial respondent is able to prove an express oral agreement of the putative father to support the child during minority, or if the elements of estoppel against the putative father, as set forth supra, are established, the putative father would be liable for such support"
Some support for the contract principle set forth in the Clevenger case can be found in the language of Harrington v. Harrington, 145 A.2d 121, (D.C.Mun.App.1958) and the principle is impliedly adopted in Fuller v. Fuller, 247 A.2d 767 (D.C.App. 1968).
The general rule adopted in Clevenger does of course conflict with Gustin and Shoemaker. However, if this case can be said to fall within either of the exceptions recognized by Clevenger, then the result would not conflict with those Ohio and Iowa decisions. Moreover, the North Dakota, Illinois, Oregon and Washington decisions cited above did not consider the exceptions set forth by Clevenger, and an adoption here of one of those exceptions would not conflict in any way with the cases mentioned. Since we reach the conclusion that the contract exception is applicable under the facts here, it becomes unnecessary for the purposes of this case to make a choice on the conflict which can occur only in a case where the facts qualify under neither of the Clevenger exceptions.
Applying the contract exception of the Clevenger decision to the facts of the instant case, we find that the husband did enter into an express agreement to support the unborn child. Before agreeing to enter into marriage the wife asked for and received an express assurance that the husband would not later reject the child. The husband's response was that he would recognize the child and treat it as his own. This necessarily meant that he agreed to the same full incidents of child support as if he were the biological father. Just as a natural biological father would be liable for continuing support of this child after divorce, so also the husband in this case is similarly liable under his contract of support voluntarily assumed by him. The wife's agreement of marriage was a sufficient consideration to make that contract valid and binding. Sponable v. Owens, 92 Mo.App. 174 (1902).
The trial court reached the correct result and the judgment is therefore affirmed.
All concur.