800 P.2d 202

**State of New Mexico, ex rel., Department of Human Services.**

**In the Matter of AGNES P., a child, and concerning Susie P. and Joe Henry P.**

No. 11621.

Court of Appeals of New Mexico.

Aug. 9, 1990.

Certiorari Denied Oct. 24, 1990.

Juan R.A. Valencia, Santa Fe, for respondents-appellants.

Katherine M. Souder, Asst. Gen. Counsel, Santa Fe, for Human Services Dept.

Larry Van Eaton, Taos, guardian ad litem.

## OPINION

CHAVEZ, Judge.

Respondents, Susie and Joe Henry P., appeal from the children's court's order dismissing them as parties in a neglect proceeding. Two issues are raised on appeal: (1) whether it was error to dismiss respondents from the neglect proceedings; and (2) whether the children's court judge erred in failing to recuse himself. We affirm.

*Facts*

Five-year-old Agnes was removed from the physical custody of Susie and Joe Henry P. by the authority of an ex parte custody order issued on December 31, 1986. Agnes' removal was sought by the Department of Human Services (HSD) after four physicians and a nurse reported that Agnes exhibited signs of sexual abuse. On January 2, 1987, HSD took legal and physical custody of Agnes. On January 12, 1987, a hearing was held at which respondents, HSD, and Agnes' guardian ad litem were present. A temporary custody order was issued requiring that legal and physical custody of the child remain with HSD pending final adjudication of the matter. A subsequent stipulation agreed to by respondents stated that Agnes was not their biological daughter, nor was she their adopted child.

On March 20, 1987, an adjudicatory hearing was held at which respondents declared they would not contest the allegations that Agnes had been sexually abused and that because of their faults and habits they were unable to provide proper parental care necessary for her well-being. The court found and adjudged Agnes to be a neglected child and ordered that legal and physical custody of Agnes remain in HSD until the family undergoes a psychological evaluation. A final disposition hearing was held on May 11, 1987, when the court ordered the implementation of a treatment plan, and continued custody of Agnes with HSD.

A periodic review hearing, lasting more than nine hours, was held on November 16, 1987. At this hearing, respondents offered exhibits, cross-examined the state's witnesses and called several witnesses on their behalf. The court's order noted that the goal of HSD's treatment plan would be to reunite the child with respondents and ordered supervised and unsupervised visits between Agnes and respondents. The court also ordered HSD to pay for the cost of the therapy and training for respondents' son who was alleged to have abused Agnes, and that respondents, their son, and the child continue with such therapy.

After a dispositional review hearing on May 23, 1988, which lasted nine hours, the court found that despite HSD's reasonable efforts to return Agnes to respondents and to implement the treatment plan ordered by the court, there was no reasonable basis for returning the child to respondents' home. The court found that respondents were still unable to provide proper parental care necessary for Agnes' well-being; that they were unlikely to be able to remedy the causes of their neglect; that respondents' son had severely sexually molested Agnes and denied his involvement; that because of respondents' ambivalence about what had happened to the child as well as the involvement of their son they were unable to either protect Agnes or to provide the environment required to remedy the damage caused by the sexual abuse that she had suffered. The court found that Agnes could not survive in respondents' home environment, and due to the lack of any legal

relationship between respondents and Agnes as well as the unsuitability of their family as a foster home, there was no reasonable basis for returning Agnes to respondents. The court adopted a treatment plan consistent with Agnes' eventual separation from respondents. This order was appealed from by respondents, but they then dismissed the appeal.

Meanwhile, the children's court issued a permanent injunction enjoining respondents from contacting, harassing, or attempting to locate Agnes or her foster parents. The court found that the violent and irrational proclivities of respondents made it likely that they would threaten and harass the protected parties. On February 20, 1989, after the action had been pending for over two years, HSD filed a motion to dismiss respondents as parties to the action. The motion alleged that Joe and Susie P. were not the parents, custodians or guardians of Agnes; that respondents were not real parties in interest; and that respondents were without standing to proceed in the action. The court granted the motion and dismissed respondents from the proceeding. This appeal follows that dismissal.

### Dismissal of Respondents from the Neglect Action

The parties to a neglect proceeding include the child, the state, and the parents, guardians or custodians of the child alleged to have been neglected or abused. SCRA 1986, 10–108(B). "Parents" are defined in the Children's Code as the natural or adoptive parents, NMSA 1978, Section 32–1–3(F) (Repl.Pamp.1989), while "custodians" are persons, other than parents or guardians, who exercise physical control, care, or custody of the child. § 32–1–3(I). Respondents contend that they are proper parties to the neglect proceeding because they are entitled to the same protection as parents or in the alternative, are the custodians of Agnes. They contend that the children's court's dismissal deprived them of their due process rights, and that it was error to dismiss them from the action.

■ Respondents argue that before they could properly be dismissed, the children's court had to terminate their parental rights pursuant to NMSA 1978, Sections 32–1–54 and –55 (Repl.Pamp.1989). Respondents admit they are not the natural or adoptive parents of Agnes. In arguing that their rights are entitled to the same protection as parents, they present three theories in support of their contention. First, they assert they were persons "acting as parents" pursuant to NMSA 1978, Section 40–10–3(H) (Repl.Pamp.1989) because they had physical custody of the child and claimed a right to custody. This statute, however, is part of the Child Custody Jurisdiction Act, NMSA 1978, §§ 40–10–1 to –24 (Repl. Pamp.1989), and relates to that legislation's definition of home state, Section 40–10–3(E), for the purpose of establishing jurisdiction, Section 40–10–4(A). It has no applicability here.

■ Second, respondents contend that a stipulation between the parties created parental or custodial rights such that they were entitled to a termination hearing. In the stipulation entered on March 20, 1987, HSD agreed to "assist the Respondents to adopt Agnes [P.] if Respondents are not found to be unfit parents." Respondents contend that this stipulation required HSD to terminate their rights, should HSD desire to do so, by means of the termination of parental rights procedure set forth in Section 32–1–55. They argue it would be improper for this court to relieve HSD from the stipulation's binding effect. This stipulation, however, did not invest respondents with any legal rights to the child, and was not binding on the court in determining who should have legal custody of the child. And, even assuming HSD was bound by the stipulation, it complied with its terms. The children's court's finding that HSD made reasonable, albeit unsuccessful, efforts to achieve the first step of reuniting the child with respondents, was supported by evidence.

■ Finally, respondents argue they were entitled to a termination hearing because they stood in loco parentis to Agnes. Persons stand in loco parentis when they put themselves in the situation of lawful parents by assuming the obligations inci-

dent to the parental relationship without going through the formalities necessary to a legal adoption. *Fevig v. Fevig*, 90 N.M. 51, 559 P.2d 839 (1977). They must intend to assume the status of parents. *Id.* While respondents appear to have assumed all the obligations of parents, we do not find that an in loco parentis status entitles them to parental termination proceedings pursuant to Section 32-1-55. Respondents have not presented us with any authority from this or other jurisdictions which holds that persons standing in loco parentis are entitled to all the due process rights of natural and adoptive parents. Furthermore, an in loco parentis status is temporary and may be abrogated at will by either the child or the surrogate parent. *Taylor v. Taylor*, 58 Wash.2d 510, 364 P.2d 444 (1961) (En Banc). At the May 23, 1988 review hearing, the children's court found that respondents were unable to provide the proper parental care for Agnes; that Agnes could not survive in their home environment; that Agnes had a growing realization that respondents were unable to provide the protection she needs. The children's court also made a finding that Agnes expressed through her guardian ad litem that she no longer wished to assert any interest in her relationship with respondents. In fact, Agnes, through her guardian ad litem, moved the court for a protective order prohibiting disclosure of psychological reports or other information to respondents so that they would not be able to locate her. Thus, the record reflects that any in loco parentis relationship had terminated.

Respondents were the custodians of Agnes at the inception of these proceedings. They remained parties to this action from December of 1986 until they were dismissed in May of 1989. HSD has had legal and physical custody of Agnes since the beginning of this action. After all reasonable efforts to reunite Agnes with respondents failed, the children's court found, in May of 1988, no reasonable basis for returning the child to them, and changed the treatment plan accordingly. Their dismissal from the action one year later was proper under the Children's Code.

The children's court followed the procedures outlined in the statutes. At the beginning of the action, respondents were proper parties to the neglect proceedings because they were the de facto custodians of the child. *See* R. 10-108(B). Pursuant to NMSA 1978, Section 32-1-34 (Repl Pamp.1989), the children's court entered a dispositional order finding the child neglected, and adopted a treatment plan. NMSA 1978, Section 32-1-38.1 (Repl.Pamp. 1989) requires that within six months of any dispositional order, and every six months thereafter the court is required to conduct periodic review hearings. Subsection F(6) provides that if the child has been in substitute care for eighteen months or longer and cannot be returned to the parents, then the children's court can "initiate termination of parental rights or permanent guardianship proceedings, unless ... the possibility of permanent placement is remote." *Id.* NMSA 1978, Section 32-1-38.2 (Repl.Pamp.1989) expresses an intent of the legislature that children be raised as members of a family unit. Subsection B provides that where a child has been in substitute care for eighteen months or longer, HSD is required to act to terminate parental rights, establish permanent guardianship or "show cause why continued substitute care is in the best interest of the child." *Id.* HSD's motion to dismiss respondents from the proceedings, and the court's order of dismissal were in furtherance of this declaration of public policy. Agnes was in substitute care for more than two years before respondents were dismissed from the action. Since respondents failed to establish any right to the child, other than their previous status as de facto custodians, under Sections 32-1-38, -38.1, and -38.2, the children's court could properly discontinue their involvement in a treatment plan, dismiss them from the neglect action, and direct that the child be freed for adoption by other qualified and suitable persons.

Insofar as respondents contend they have a protected liberty interest in their relationship with Agnes, we find they were given all the process constitutionally re-

quired. They were afforded numerous hearings, appointed counsel, conducted discovery, presented evidence, and called and cross-examined witnesses. *See Smith v. Organization of Foster Families for Equality of Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (foster parents were afforded adequate due process where a conference with the social services department and a full adversary administrative hearing were provided). The children's court and HSD made reasonable efforts, with the help of psychiatrists, to reunite Agnes with respondents. It was only after such efforts failed that the children's court dismissed them from the action.

### Bias of the Children's Court

█ During this neglect action, the children's court judge recused himself from another case in which respondents were the plaintiffs. At the hearing on respondents' motion to disqualify, Judge Caldwell stated that he removed himself from the other case because of the deep hurt that they were suffering in his court on this matter. Respondents argue that as the judge had a duty to sit, *Gerety v. Demers*, 92 N.M. 396, 589 P.2d 180 (1978), one must presume that his decision not to perform his judicial role was in conformance with his duty not to sit where he has personal bias or prejudice concerning a party. *Martinez v. Carmona*, 95 N.M. 545, 624 P.2d 54 (Ct.App.1980). This contention ignores the evidence to the contrary, *see Gerety v. Demers*, that Judge Caldwell believed it would be harsh to subject respondents to further proceedings in his court.

Respondents also argue that the court's comments at the hearing on their motion for discovery were evidence of bias because the judge stated that he was not certain that HSD needed to terminate their parental rights. Respondents have established no extrajudicial source for any alleged bias and rely exclusively on the in-court comments. These comments do not require recusal because unfavorable rulings do not in themselves prove bias requiring recusal. *See State v. Case*, 100 N.M. 714, 676 P.2d 241 (1984). The comments afford no basis for disqualification because they did not result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *See United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 247, 629 P.2d 231, 323 (1980), *cert. denied*, 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981). Since respondents have failed to meet their burden of establishing that Judge Caldwell had a personal or an extrajudicial bias or preference against them, the judge properly refused to disqualify himself. *Id.; see Gerety v. Demers*.

We note that the record proper does not have the child's last name deleted in violation of NMSA 1978, Section 32–1–39(A) (Repl.Pamp.1989). The clerk of this court is instructed to return the copy of the children's court record filed in this court, and the children's court is instructed to delete the name of the child from all documents contained therein. Thereafter, the children's court shall return the copy to this court. The clerk of this court is directed to delete the name of the child from all documents filed in this court that are not part of the children's court record.

We affirm.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.