### In re the Marriage of

### Janet R. STEIN, Respondent/Cross–Appellant,

### v.

### Edward S. STEIN, Appellant/Cross–Respondent.

### Nos. 59525, 59584 and 59706.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 28, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
June 3, 1992.

Application to Transfer Denied
July 21, 1992.

Bernard A. Barken, C. Michael Bakewell, St. Louis, for appellant/cross-respondent.

Michael A. Gross, St. Louis, for respondent/cross-appellant.

GRIMM, Presiding Judge.

In this dissolution proceeding, husband and wife separated while in the process of adopting a Korean infant. Husband withdrew his petition to adopt, and wife adopted the child on her own after the PDL hearing but before the dissolution hearing.

Husband appeals from (1) the award of child support to wife in the dissolution decree;[1] (2) the denial of his motion to terminate child support PDL; and (3) the award of child support greater than the presumed child support amount.

Wife appeals from (1) the denial of maintenance; (2) the valuation of marital property awarded to husband; (3) a finding that wife, but not husband, had engaged in marital misconduct; (4) a finding that wife had been disingenuous with the court; and (5) a distribution of marital property in favor of husband. We affirm in part, reverse the child support award in the dissolution decree, reverse the denial of husband's motion to terminate child support PDL, and remand for the trial court's further consideration of wife's maintenance.

## I. Background

Husband and wife were married on August 21, 1983. In October, 1985, they made a preliminary application to adopt a child. On May 7, 1987, they executed an adoption placement agreement to commence the process of adopting a baby girl who had been born in Korea on April 3, 1987.

Husband was required to execute a "Statement of Adoption" for use in connection with issuance of the child's emigration passport. In this statement, husband represented he would adopt, love, maintain, support, and educate child.

Husband also executed an "Affidavit of Support" for the American Embassy. This affidavit included representations that he would receive, maintain, and support child. The purpose of this affidavit was to aid the American consul in determining whether the child would become a public charge if admitted to the United States.

Husband and wife picked up child in Kansas City on July 6, 1987. They filed a Petition for Transfer of Custody and for

---

1. Husband's first point actually says "[t]he trial court erred in the judgment and decree of dissolution and in its order PDL on appeal in awarding any child support to wife...." The PDL award was affirmed on appeal. *Stein v. Stein,* 787 S.W.2d 787 (Mo.App.E.D.1990). Therefore, husband is barred from relitigating this issue.

Adoption in St. Louis County. On September 3, 1987, the Petition for Transfer of Custody was taken up and custody was transferred to husband and wife.

On May 15, 1988, the parties separated. Wife filed her petition for dissolution of marriage on July 21, 1988.

On September 1, 1988, wife filed her motion PDL for temporary custody of and support for the child, temporary maintenance, attorneys fees, and suit money. The motion was heard October 27, 1988, and ruled November 3, 1988.

In the meantime, on September 13, 1988, husband signed a motion to withdraw as petitioner in the adoption proceeding. By consent, on November 10, 1988, the adoption court sustained the motion.[2]

Wife then filed an amended petition for adoption, seeking to adopt child alone. In her amended petition and at the adoption hearing, wife represented to the court she had the ability to "properly care for, maintain, and educate" child. The adoption was granted December 15, 1988.

Returning to the PDL proceeding, we note that in its November 3 order, the trial court ordered husband to pay $1,500 per month temporary child support and $3,500 per month temporary maintenance. Husband's motion to amend or for a new trial was denied, and he appealed. This court affirmed. *Stein v. Stein*, 787 S.W.2d 787 (Mo.App.E.D.1990).

After the adoption was granted, husband filed a motion to terminate obligation to pay support PDL. The trial court dismissed his motion, reasoning that it had lost jurisdiction of the PDL proceeding once the PDL order was appealed. *Stein*, 787 S.W.2d at 788. This court found the trial court had jurisdiction and remanded. *Id.* at 789.

Testimony in the dissolution proceeding was heard in June and July, 1990. The dissolution decree, including extensive findings of fact and conclusions of law, was entered on October 4, 1990. The court ordered husband to pay child support of $1500 and also awarded him temporary custody and visitation.

On this court's remand of husband's earlier motion to terminate temporary child support payments, *Stein*, 787 S.W.2d at 789, the trial court denied husband's motion "in light of this Court's finding that the child is entitled to support." This denial resulted in husband's liability for child support after the adoption on December 15, 1988, and until the dissolution was granted on October 4, 1990.

On January 16, 1991, wife filed a motion seeking, among other things, child support PDL on appeal. The court ordered husband to pay $1,500 child support retroactive to January 14, 1991. Based on husband's representations he would make involuntary child support payments commencing January 31, 1991, the supersedeas bond was set at $54,000. Husband filed this bond, which represents support payments from January 1, 1989, to January 14, 1991, and interest through January 31, 1993.

In our review, the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or unless the court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## II. Husband's Appeal

### A. Child of the Marriage

In his first point, husband asserts the trial court erroneously awarded child support to wife in the dissolution decree because child, who was neither the natural or adoptive child of husband, was not a "child of the marriage."

The trial court concluded that child was "entitled to support because she is a 'child of the marriage' as that phrase is used in

2. The adoption court's November 10, 1988 order also provides: "Motion to Terminate Transfer of Custody argued and overruled. The Court finds that any determination of the parties rights to custody and visitation and the obligation of Petitioner Edward S. Stein to pay support for the minor child shall be determined in [the dissolution proceeding]." A copy of the Motion to Terminate Transfer of Custody is not in the legal file.

Section 452.340.1, RSMo." Section 452.-340.1.[3] states:

> In a proceeding for dissolution of marriage, legal separation or child support, the court may order either or both *parents* owing a duty of support *to a child of the marriage* to pay an amount reasonable or necessary for his support. . . .

Section 452.340.1. (emphasis added).

Clearly, this section authorizes a court to order biological parents in a dissolution proceeding to support their children. Adopted children also are entitled to support from their adoptive parents under this statute. *See* § 453.090, RSMo 1986.

▮ In addition, our courts have recognized two situations where a non-biological or non-adoptive parent is obligated to support a spouse's child after dissolution. One situation is an express contract between a husband and wife; the other is based on an estoppel theory.

An express contract to support an unborn child was found in *L... v. L...*, 497 S.W.2d 840 (Mo.App.W.D.1973). There, husband and wife met while she was visibly pregnant by another man. When husband proposed marriage, wife raised her concern that husband would not accept the child as his own. Husband promised he would recognize and treat the child as his. He made this promise before and after the marriage. The court found the husband liable to support child under an express contract theory. "The wife's agreement of marriage was a sufficient consideration to make that contract valid and binding." *Id.* at 842.

Wife, in her brief, does not contend that she had a contract with husband for support of the child. Rather, she asserts that husband contracted expressly or impliedly with adoption and immigration officials to adopt, support, and educate child.

The evidence does not support a finding of an express or implied contract. Other jurisdictions have rejected the assertion that an "Affidavit of Support for American Embassy" constitutes a contract for support of an immigrant. *See County of San Diego v. Viloria*, 80 Cal.Rptr. 869, 873–74, 276 Cal.App.2d 350, 356–57 (1969). There, the California court pointed out the document is an "affidavit", not a "contract" for support. Further, the document is signed by only one party and does not recite or disclose a consideration.

In *State ex rel. Attorney General v. Binder*, 96 N.W.2d 140, 143 (Mich.1959), the Michigan Supreme Court stated that "no statutory authority appears for officials of the state department exacting from sponsors of immigrants binding legal agreements to support them." In addition, the affidavit clearly states that its purpose is "to aid the American consul in determining that the prospective immigrant is not a person who will become a public charge." We find no contract.

Similarly, the "Statement of Adoption" states it is for use in connection with the issuance of an emigration passport. We find no indication from the document or the record that emigration officials intended the statement of adoption to constitute a contract to adopt or support child, or that they had the authority to do so. The award of child support cannot be upheld on an express or implied contract theory.

▮ Wife also contends that the award should be upheld under an estoppel theory.[4] This exception has been applied when "the husband represent[s] himself to the child as his natural father with an intent that the representation be accepted and acted upon by the child and the child relies on the representation to his detriment."[5] *S.E.M.*

---

**3.** All statutory references are to RSMo (Cum. Supp.1991) unless otherwise indicated.

**4.** In her points relied on, wife refers to this theory as adoption by estoppel. Adoption by estoppel is not applicable in this case. *See Goldberg v. Robertson*, 615 S.W.2d 59, 62 (Mo. banc 1981). However, her arguments are based on equitable estoppel and we consider these, *ex gratia.*

**5.** *Clevenger* limited liability to where a husband represents to child that he is child's natural father and where this representation has been long and continuing. *Clevenger v. Clevenger*, 189 Cal.App.2d 658, 674, 11 Cal.Rptr. 707, 716 (1961). *But see Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984).

*v. D.M.M.*, 664 S.W.2d 665, 667 (Mo.App. E.D.1984). In this case, actual reliance by child was not possible because child was only thirteen months old when husband and wife separated. *See Id.* at 667.

Some courts have held "[t]here need not be a showing of a conscious change of position by the party asserting the estoppel. That element of estoppel is satisfied when a person's position is changed for him to his detriment and prejudice by the acts of the person against whom the estoppel is asserted." *A.S. v. B.S.*, 139 N.J.Super. 366, 354 A.2d 100, 103 (Ch.Div.1976). However, husband's representations to support child should be held binding only if necessary to prevent injustice. *See Sales Serv. Inc. v. Daewoo Int'l (America) Corp.*, 770 S.W.2d 453, 456 (Mo.App.E.D.1989).

Child was brought to the United States and adopted by a woman who represented to juvenile court that she had the ability to properly care for, maintain, and educate child. In this case, no one changed child's position to her detriment. The fact that child would live more affluently with husband's support is irrelevant absent a showing that becoming the adoptive daughter of a professional woman willing to love and support her is a step down from living as an orphan in Korea. We do not find the requisite detriment for estoppel.

We also consider estoppel as to wife. Despite husband's withdrawal as petitioner, wife was able to adopt child. She testified she understood that if the adoption was granted the child would be hers, alone. She stated she could properly care for, maintain, and educate her as a single parent. We find no injustice would result to wife or child by not enforcing husband's promise.

Finally, we note Missouri's adoption law does not allow an adoption decree to be entered until the child has been in the lawful and actual custody of the prospective parent[s] nine months. § 453.080.1, RSMo 1986. It is almost inevitable that a prospective parent, relying on his or her spouse's purported intent to adopt, would form an emotional bond with a child. However, the option to withdraw as petitioners for adoption is inherent in our system. Where a couple is attempting to adopt, a spouse's express and implied representations that the spouse will support the child must be viewed in light of this option.

We reverse the child support award in the dissolution decree. Husband is entitled to restitution of all child support he has involuntarily paid since January 14, 1991, plus interest. *See In re Marriage of Cook*, 663 S.W.2d 789 (Mo.App.S.D.1984).

We also reverse husband's temporary custody and visitation rights with child.

### B. Termination of Child Support PDL

Husband, in his second point, asserts the trial court erred in denying his motion to terminate his obligation to pay support PDL because any obligation for support terminated upon wife's adoption of child.

At the time of the first PDL hearing, husband was still a petitioner for adoption and still had legal custody of child. On appeal, this court affirmed the trial court's PDL award of child support on the theory that husband stood in loco parentis to child. *Stein*, 787 S.W.2d at 788.

Husband was obligated to support child as long as he retained legal custody. Husband's custody ended when wife adopted child on December 5, 1988.

Wife's adoption severed "all legal relationships and all rights and duties between such child and his natural parents...." Section 453.090.1, RSMo 1986. The rights and duties of those standing in loco parentis by virtue of a formal order for transfer of custody were also severed.

Nor is husband obligated to support child as a stepparent. A stepparent is "required to support his or her child [only as] long as the stepchild is living in the same home as the stepparent." Section 453.400.1, RSMo 1986.

We reverse the trial court's denial of husband's motion for termination of child support PDL. Husband is entitled to restitution of all child support he has paid since

December 15, 1988, plus interest. *In re Marriage of Cook*, 663 S.W.2d at 790.

### C. Child Support Amount

■ In husband's third point, he asserts the trial court erred in its PDL order and dissolution decree by awarding wife $1500 per month child support. Husband states that the award exceeded the $1000 maximum Presumed Child Support Amount pursuant to Rule 88.01 as prescribed by the Schedule of Basic Child Support Obligations set forth in Form 14. Since we have reversed the child support in the dissolution decree, we need only consider the PDL award.

The PDL order was previously appealed and affirmed. *Stein*, 787 S.W.2d at 789. Further challenges to the PDL award are barred.

In addition, we observe that the PDL order was entered on November 3, 1988. Rule 88.01 was adopted October 2, 1989. Therefore, Rule 88.01 does not apply. Point denied.

### III. Wife's Appeal

### A. Maintenance

■ In wife's first point, she alleges the trial court abused its discretion in refusing to award her maintenance because (1) the evidence was uncontroverted that she had not earned substantial income from her profession during the marriage; (2) she did not have an established client base upon which immediate full-time employment could be premised; and (3) husband testified wife could not be expected to support herself in less than 18 months and he should be ordered to pay her $3,500 per month for 18 months.

■ A trial court has broad discretion in awarding maintenance. It is the burden of the complaining spouse on appeal to demonstrate an abuse of that discretion. *Wilk v. Wilk*, 781 S.W.2d 217, 224 (Mo.App.E.D.1989).

Under § 452.335, a court awarding maintenance to a spouse "must find that the spouse seeking maintenance, lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and is unable to support himself through appropriate employment...." *Wilk*, 781 S.W.2d at 224.

On *direct* examination, husband testified that wife had never gone out and sought to establish herself as an architect. He expressed the opinion it would take 18 months to get herself established as a full time architect. Husband was then asked:

Q. And are you willing, and are you asking the Court to order you to pay $3500.00 a month as maintenance for a period of eighteen months from the date of this decree?

A. Yes, I am.

The trial court found that wife is capable of supporting herself. It further found that wife is an architect; that her claimed losses in her architectural practice were due to large medical expenses which her architectural corporation did not pay; and her practice pays her automobile expenses and some of her household expenses.

However, when the trial court evaluated wife's ability to support herself, it anticipated wife would be receiving $1500 child support each month. Nothing in the record before us indicates whether the trial court considered wife's ability to meet her reasonable needs while maintaining child without any support from husband. We therefore reverse and remand the maintenance issue to permit the trial court to consider wife's ability, absent the $1,500 per month, to provide for her reasonable needs. The trial court may make this determination based on the record before it.

### B. Property Valuation

■ In wife's second point, she contends the trial court erred in its valuation of certain marital property. She asserts she "produced bank records which were admitted into evidence and which established unequivocally that [husband's] valuation of the marital bank accounts under his control was understated by some $55,-000.00."

Husband's accountant prepared his statement of property containing certain bank

balances. The accountant testified she calculated the mid-month checkbook balances of the accounts for April, 1990. She stated that her calculations were lower than the bank balances at mid-month or at the end of the month, because those balances did not reflect checks that were outstanding. The bulk of these checks, she said, were written to payees "all over the country." The trial court adopted husband's statement of account balances.

" '[I]t is the function, indeed the duty, of the trial court to decide the weight and value to be given to the testimony of any witness. On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence.' " *Hogan v. Hogan,* 796 S.W.2d 400, 403 (Mo. App.E.D.1990) (citing *Wynn v. Wynn,* 738 S.W.2d 915, 918 (Mo.App.E.D.1987)). The trial court's adoption of husband's figures was supported by substantial evidence and not against the weight of the evidence.

■ Wife also claims error in the value assigned to husband's Keogh plan. At trial, wife produced tax returns which she states "established unequivocally that ... [husband's] valuation of the contributions he had made to his Keogh plan during the marriage was understated by some $24,-000.00." The tax returns for 1983 through 1989 show contributions during marriage of $66,193.00. Husband's exhibit prepared by his accountant reflected contributions of $42,222.07.

Husband's accountant testified that $22,-957.00 from plans entered into prior to August 21, 1983 (the date the parties were married) were rolled over into the Keogh plan. Husband and husband's accountant testified that these funds were rolled over during the parties's marriage, and thus, may have been reflected on his tax return.

In addition, husband's accountant testified that the contributions to the plan for a particular year were made in April, the following year. Consequently, the 1983 tax return, reflecting a Keogh plan contribution of $15,000, may reflect contributions from the 1982 tax year. We find the trial court's valuation of husband's Keogh plan was supported by substantial evidence. Point denied.

## C. Marital Misconduct

■ Wife's third point assigns error to the trial court's (1) finding she, but not husband, had engaged in marital misconduct, (2) finding she had been disingenuous with the court, and (3) favoring husband in its distribution of property when the evidence of husband's misconduct was of equal or greater substance than evidence of her own misconduct.

The trial court found wife engaged in marital misconduct by "taking control of the parties' assets, by charging to the parties' credit cards and by taking for her own use a substantial amount of the marital monies and marital liquid assets in the total amount of $54,515 shortly after the parties' separation...." The court then enumerated the assets misused and debts incurred. We have reviewed the record and find the trial court's conclusions were supported by substantial evidence.

As to the other two allegations of error under this point, they essentially rest on the credibility of witnesses. The trial court determines the credibility of the witnesses. *Frerichs v. Frerichs,* 704 S.W.2d 258, 262 (Mo.App.E.D.1986). We defer to that determination and find no error. Point denied.

Costs are assessed to husband.

CRANDALL and SIMON, JJ., concur.